MISSOURI STATE LIFE INSURANCE COMPANY *v.* HILL.

Opinion delivered July 14, 1913.

1. INSURANCE—CANCELLATION OF POLICY—EVIDENCE.—Evidence *held* sufficient to show an agreement between the parties to cancel a policy of life insurance. (Page 23.)

2. INSURANCE—LAPSE OF POLICY—ACTION OF PARTIES.—Where the insurer and the insured, by their acts indicated that they considered a policy of insurance as having lapsed, the court will follow

the construction and interpretation of the contract adopted by the parties themselves, as shown by their acts and conduct. (Page 23.)

3. INSURANCE—KNOWLEDGE OF CANCELLATION—ESTOPPEL.—The beneficiary of a policy of life insurance, who has knowledge of an agreement between the insurer and insured amounting to its cancellation, is estopped from asserting any right under the policy. (Page 23.)

Appeal from Mississippi Circuit Court, Osceola District; *W. J. Driver,* Judge; reversed.

STATEMENT BY THE COURT.

This is an action by Dua Frances Hill against the Missouri State Life Insurance Company to recover three thousand dollars upon a policy of life insurance issued November 15, 1905, on the life of Charles Frederick Hill, the husband of the plaintiff. The plaintiff was designated as beneficiary in the policy. On August 28, 1911, Hill borrowed on his policy $354.00, its full loan value. On November 1, 1911, Hill wrote the company asking an extension of sixty days on his premium maturing November 1, 1911. The insurance company granted the extension and Hill executed a note for the premium, due January 15, 1912, without grace, and promised to pay to the insurance company at its home office in St. Louis, Missouri, the amount of the premium note. On December 15, 1911, the insurance company wrote Hill reminding him of the fact that his note would mature January 15, 1912; that it was payable at the home office of the company in St. Louis, Missouri, and that in order to keep his insurance policy in force payment must be received "on or before due date." On January 13, 1912, Hill placed a letter in the postoffice at Joiner, Arkansas, properly addressed to the defendant at St. Louis, Missouri, and stamped, containing a check for the amount of his premium note. The testimony on the part of the plaintiff tends to show that in due course of mail this letter would have reached St. Louis on the evening of the 13th day of January, 1912, and should have been received by the plaintiff in due course of mail on that day, or, at latest, on the day following. The testimony

on the part of the defendant tends to show that it did not receive the letter until January 16, 1912, and that, according to its custom, the date of the receipt of the letter was stamped on it immediately after it was opened. On the same day, January 16, 1912, the defendant wrote to Hill the following letter:

"As our renewal premium notes do not provide for any days of grace, in accordance with notice sent you, and as your remittance tendered in payment thereof did not reach this office until today, one day after due date, the above policy has lapsed, and before we can consider the acceptance of the settlement tendered, it will be necessary that you fill out, date and sign, in the presesnce of witnesses, and attach blank application for reinstatement and return the same to this office for the consideration of our medical department."

When Hill received this letter he handed it to his wife and said to her, "This policy has lapsed." She took the letter and read it. Having received no answer to this letter, the defendant on January 26 again wrote Hill, calling his attention to the fact that the policy had lapsed and that they could not receive the check as payment of the premium until they received his application for reinstatement. They inclosed him another blank for reinstatement and urged him to fill it out and send it in by return mail. On February 5, 1912, they again wrote Hill as follows:

"Up to the present time we have not received a reply to our communication of January 26, with reference to application for reinstatement under the above-numbered policy.

"Now, Mr. Hill, under no consideration can we consider the acceptance of the remittance tendered in payment of your past due note without reinstatement. In this connection we wish to state that an application for reinstatement is nothing to be feared if you are in as good health now as you were when taking out the policy and have had no serious sickness, accident, etc., since

then.    In that event, we see no reason for an unfavorable action.

"We regret very much to have to cause you this additional trouble, but the provisions of your note and the strict insurance laws of this State must be complied with; otherwise, we would soon get ourselves into trouble."

Having received no answers to any of these letters, the defendant on February 17, 1912, wrote Hill substantially as it did in the letter last copied above and urged him to advise it by return mail what he intended to do in the matter.    On March 22, 1912, not having received any answers to any of the letters, the defendant wrote Hill as follows:

"Not having received a reply to our various communications addressed to you, we herewith return your check tendered in payment of renewal premium note for $112.80, with interest, due January 15, 1912, under the above-numbered policy."

The insurance company heard nothing further in regard to the matter until after Hill's death, which occurred September 1, 1912.    After this correspondence Hill applied and secured a policy of insurance on his life in the New York Life Insurance Company and told his wife that he intended to be reinstated with the Missouri State Life Insurance Company in the fall of 1912 if he was able.

The testimony on the part of the plaintiff tended to show that Hill was accustomed to paying his premiums on the policy in question by sending a check for the amount through the mail to the insurance company.    The officers of the insurance company admitted that if the check had been received on or before the 15th day of January, 1912, the defendant would have accepted it in payment of the premium.

The jury returned a verdict for the plaintiff for $2,588.90, being the amount of the policy sued on, less the loan obtained by Hill from the insurance company on his policy.    From the judgment rendered, the defendant has duly prosecuted an appeal to this court.

*J. T. Coston,* for appellant.

1. When Hill deposited the letter containing the check in the postoffice, he thereby made the United States mail his agent for the delivery of the letter and check to the appellant, and the failure of his agent to deliver the check on or before the 15th of January, 1912, worked a forfeiture of the policy *eo instanti,* by virtue of the terms of the policy and the premium note. 17 Ark. 431, 433; 30 Cyc. 1269; 3 Cooley, § 2368; 93 U. S. 31.

2. Hill acquiesced in the forfeiture, he recognized the validity of the forfeiture, ratified and acquiesced in it and abandoned all claim under the policy. 43 N. W. 197; 106 S. W. 681, 682; 63 Fed. 772; 74 Pac. 690; 178 U. S. 345; *Id.* 347; *Id.* 327; *Id.* 351; 3 Cooley, 2833.

*Appellee, pro se.*

1. Forfeiture of a life insurance policy is not favored by the courts, and will not be declared unless there is some substantial ground upon which to base the same. 183 U. S. 25; 127 Fed. 651; 96 U. S. 234; *Id.* 572; 104 U. S. 252; 41 Fed. 506; 80 Pac. 213; 62 Atl. 681.

2. Silence is not a waiver. 148 S. W. 626; *Id.* 631; 25 Cyc. 848; 101 Mo. App. 93; 25 Cyc. 784; 126 Fed. 83.

The mere fact of taking out insurance in another company does not affect his rights or interest under the contract involved here. 25 Cyc. 785; 72 S. W. 436; 182 Fed. 850.

3. When Mr. Hill deposited his letter with his personal check inclosed, duly stamped and addressed to appellant, in the United States mail in time for the check to have reached appellant on or before January 15, 1912, this was a payment of the premium note, and appellant could not declare a forfeiture. 159 Fed. 833; 77 Hun. 556, 28 N. Y. Supp. 931: 156 Fed. 294; 74 N. W. 394; 35 S. E. 616; 25 N. E. 299; 71 N. C. 480; 32 S. E. 728.

HART, J., (after stating the facts). It is contended by counsel for the defendant insurance company that when Hill deposited the letter containing the check for his premium in the postoffice he thereby made the United States mail his agent for the delivery of the letter and

check to the defendant, and the failure of his agent to deliver the check on or before the 15th day of January, 1912, by virtue of the terms of the policy and the premium note, worked a forfeiture of the policy. On the other hand, it is contended by the plaintiff that the United States mail had been employed by the insured for transmitting his premiums to the company on the policy sued on, and that the insured "having deposited in the postoffice, properly addressed and stamped, a letter containing a check for the premium in apt time to have reached the insurance company before the premium note was due no forfeiture of the policy could be declared. The conclusion we have reached renders it unnecessary to decide this contention. If it be assumed that the insurance company had no legal rights under the terms of the insurance policy and of the premium note under the circumstances to forfeit the policy the fact remains that it claimed the right to do so and exercised that right.

"The rule as to the inability of the insurer to cancel the policy on its own initiative does not prevent an abandonment of the contract by agreement of the parties. And in the absence of fraud or coercion, such abandonment, if definite, will be effective, though at the time the company is erroneously claiming the right to forfeit or avoid the policy on account of some alleged violation of its conditions." Cooley's Briefs on the Law of Insurance, § 2883.

The defendant insurance company several times wrote to Hill, the insured, and called his attention to the fact that, under the provisions of his insurance policy and premium note and the strict insurance laws of the State of Missouri, it was necessary to file an application for reinstatement and that, unless he did so, his policy would be forfeited. The insurance company called his attention to the fact that nothing was to be feared in making his application for reinstatement provided he was in as good health as when he took out the policy and had had no serious sickness, accident, etc., since that time. Upon

his repeated refusal or neglect to answer its letters, the insurance company on March 22, 1912, returned to the insured his check tendered in payment of his renewal premium note, and the insured received and accepted the check returned to him. The record shows that he after-wards procured a policy in another company and this is conclusive proof of the fact that he was not sick at the time the company declared his policy forfeited and is also proof of the fact that, by signing up the blank application for reinstatement, he might have kept his policy in force. He made no attempt to obtain a judicial interpretation of his contract of his insurance. He did not return to the insurance company his check for the premium note and insist that his policy of insurance was still in force. On the contrary, he kept the check and made no reply to the insurance company. Under the circumstances this amounted to a voluntary agreement between himself and the insurance company to cancel his policy and the effect was to terminate the contractual relation between himself and the insurance company. The case is not one where the company is seeking after the death of the insured to declare the insurance forfeited, but the question is whether or not, under all the circumstances adduced in evidence, the contract of insurance was terminated by the parties themselves during the insured's lifetime, and we hold that it was. Under the undisputed facts and circumstances adduced in evidence no other conclusion can be drawn than that both parties considered the contract of insurance at an end, and, in accordance with the general rule as to the construction of contracts in determining the intention of the parties, we will follow the construction and interpretation of the contract adopted by the parties themselves as shown by the acts and conduct.

The plaintiff, who was the wife of the insured, and the beneficiary named in the policy, had knowledge of all the facts which we have above set forth and which we do not deem it necessary to repeat here. Therefore, we hold that under the principles announced in the

case of *Franklin Life Insurance Company* v. *Morrell,* 84 Ark. 511, the plaintiff was estopped to assert that the policy had not been cancelled and that she can not assert any rights under the policy in this suit.

The evidence in the case is undisputed and the case appears to have been fully developed. Therefore, the judgment will be reversed and the cause of action dismissed.