## PIONEER LIFE INSURANCE COMPANY v. Cox.

### Opinion delivered April 27, 1914.

1. LIFE INSURANCE—FORFEITURE—MISREPRESENTATIONS.—A life insurance company may declare and enforce a forfeiture of a policy, if there was a forfeiture according to its terms, notwithstanding false representations in the procurement of the possession of the policy.   (Page 585.)

2. LIFE INSURANCE—FORFEITURE OF POLICY—NONPAYMENT OF PREMIUMS—QUESTION FOR JURY.—Where a life insurance policy provides for its forfeiture for the nonpayment of premiums, and there is evidence that deceased had not paid the premiums due, it is error not to submit to the jury the issue of the company's right to declare a forfeiture.   (Page 587.)

3. LIFE INSURANCE—PREMIUM—PAYMENT BY NOTE—SURRENDER OF POLICY—MUTUAL CONSENT.—The insured, who has given a note in payment of the first premium on a life insurance policy, may surrender the policy, and cancel the contract, although the note has not matured, the abandonment being by mutual consent   (Page 588.)

4. LIFE INSURANCE—DENIAL OF LIABILITY—WAIVER OF PROOF OF LOSS.—Where an insurance company, through the fraudulent representations of its agent, obtained possession of a policy, and declared a forfeiture without any right to do so, this act is tantamount to a denial of liability, which would constitute a waiver of proof of loss. (Page 588.)

Appeal from Hempstead Circuit Court; *Jacob M. Carter,* Judge; reversed.

*Sain & Sain* and *Samuel Frauenthal,* for appellant.

1. The real question involved was as to whether or not the policy was in force and a binding contract when its possession was obtained, and whether it was in full force at the time of the death of the insured. The first instruction given at appellee's request was erroneous because it ignored appellant's theory of the case and per-

mitted a recovery merely upon a finding that possession of the policy was obtained through some misrepresentation of fact, whereas, the manner of obtaining the policy could not warrant a recovery, if the policy was at the time in fact void and subject to cancellation. 66 Ark. 612; 3 Cooley's Briefs on Law of Insurance, § 2841; 1 L. R. A. (N. S.) 623; 25 Cyc. 793.

2. The policy was invalid and ineffective by reason of the fact that the first premium was not paid.

Where a policy provides that it shall be void if premiums are not paid when due, default in the payment of the premium when due will terminate the insurance without any action on the part of the insurer. 3 Cooley's Briefs, 2260; 92 Ark. 378; 67 Ark. 147; 74 Ark. 507; 75 Ark. 25; 85 Ark. 337; 87 Ark. 70; 104 Ark. 288; 93 U. S. 24; 187 U. S. 335.

3. The general agents of appellants in Arkansas employed the agent, Jarratt, as soliciting agent at Hope, under a written contract, by the terms of which he was only authorized "to procure and transmit applications from individuals for insurance."

Jarrett was not authorized by this contract, and he had no power, to accept notes in lieu of cash or to extend time of payment of notes or premiums; and the company was not bound by any such action on his part. 76 Ark. 328; 54 Ark. 75; 75 Ark. 25; 85 Ark. 337; 92 Ark. 378.

4. It was error to refuse to instruct the jury that plaintiff could not recover if proof of death was not made within one year after the death of the insured, as provided by the policy. 25 Cyc. 883-884.

5. The question of the surrender of the policy should have been submitted to the jury, as requested by appellant. 109 Ark. 17; 178 U. S. 327.

*R. P. Taylor* and *O. A. Graves,* for appellee.

1. The first premium was paid. The uncontradicted testimony shows that Jarratt accepted notes in payment of the premium for the first year. His contract with the general agents did not debar him from accepting notes. It is shown that sixteen dollars was paid to be applied on

the first premium. It is further shown that there was a custom on the part of appellant's soliciting agents in Arkansas, with the knowledge of the general agents to accept notes in payment of first premiums. This custom is authorized, if not recognized, by the application itself, which states, "I have given to J. C. Jarratt, Agent, $.......cash, and $....... being the total amount paid by me on account of this application," etc., the last blank being evidently intended to insert the amount of note or notes. The right to insist on a cash payment was waived. 72 N. E. 200; 81 Ark. 160; 83 Ark. 575; 92 Ark. 378; 62 Ark.' 562; 58 N. W. 496; 36 Pac. 113; Bacon on Benefit Societies (3 ed.), § 426, and cases cited; Century Dig., tit. "Insurance," § 968.

2. Proof of death, under the circumstances, was not necessary. Defendant waived the right to insist upon that proof by its own act in entering the policy upon its books as forfeited or cancelled, prior to the time when proofs of death should have been furnished. 58 Fed. 541. Moreover, on plaintiff's demand for the policy, the basis of the suit, appellant refused to furnish same or to entertain any claim on said policy "for the reason that it had been cancelled." Bacon on Benefit Societies and Life Ins. (3 ed.), § 437, and cases cited; 35 Ark. Law Rep. 134; *Id.* 269.

McCULLOCH, C. J. The plaintiff, Amanda Cox, widow of John M. Cox, instituted this action to recover the amount of a policy of life insurance in the sum of $3,000, alleged to have been issued by the St. Louis National Life Insurance Company upon the life of said John M. Cox, plaintiff being the beneficiary named in the policy.

Defendant, Pioneer Life Insurance Company, succeeded the St. Louis National Life Insurance Company, and is liable upon its policies.

It is alleged in the complaint that the policy was dated May 6, 1909, and was forwarded from the home office of the company at St. Louis to the general agents in Little Rock, and by them forwarded to one Jarrett, a so-

liciting agent, who delivered it to Cox; that Cox left the
policy at his home with his wife, the plaintiff herein, and
that one Hammonds, an agent of the company, called at
the house during the month of October, 1909, and, by
falsely representing to plaintiff that her husband had
directed that the policy be turned over to the agent, pro-
cured from her a surrender of the possession of the pol-
icy. Cox died in April, 1910, shortly before the second
premium on the policy was to become due.

The defendant answered, denying the charge of
fraudulent misrepresentation in procuring the surrender
of possession of the policy, and alleging as a defense
that the first premium had not been paid, and on that ac-
count the policy was, according to its terms, forfeited,
and that it was taken up and surrendered with the con-
sent of Cox and his wife.

The case was tried before a jury upon testimony ad-
duced from both sides of the controversy, and the court
submitted the case upon an instruction given at plaintiff's
request to the effect that if the company obtained posses-
sion of the policy "through a material misstatement of
facts on the part of its agent," and "that the plaintiff
would not have surrendered said policy except for said
misstatement of facts," that the verdict should be for
the plaintiff.

The court refused to give instructions requested by
defendant submitting the question of the company's right
to declare a forfeiture and take up the policy, or submit-
ting the question of the surrender and abandonment of
the policy by mutual consent.

The jury returned a verdict in favor of the plaintiff,
and an appeal has been prosecuted to this court.

If, according to the terms of the policy, there was a
forfeiture thereof, which the company had the right to
declare and enforce, then there could be no recovery, not-
withstanding the alleged false representations in the pro-
curement of possession of the policy.

It is insisted, however, that under the uncontradicted
evidence, the company had no right to declare a for-
feiture.

We are, however, of the opinion that the state of the proof called for a submission of the issues to the jury.

The first, or advance premium, $90.99, was never paid by Cox, except a small portion of it, the proof showing that $16 was actually paid. The policy was forwarded from the home office to the general agents at Little Rock, who, in turn, sent it to Jarrett, the local agent at Hope, who delivered it to Cox and took two promissory notes from Cox for the advance premium.

The proof adduced by defendant tended to show that Jarrett was only soliciting agent, without authority to waive the payment of the premium. It is shown, however, by proof which is not contradicted, that it was customary to give the soliciting agent sixty days, and a longer time, if necessary, within which to deliver policies, and that the portion of the first premium which was to come to the company was charged to the soliciting agent. The proof further shows that it was customary for soliciting agents to take notes for the first premium, the greater portion of which was retained by him as commissions, and account to the company for the portion of the premium going to the latter.

The jury might have found, under this proof, that the company waived the payment of the first premium in cash and authorized the soliciting agent to accept notes for the amount; but it can not be said to be an undisputed fact in the case that the company waived its right to declare a forfeiture in case the assured failed to pay the premium. The policy contains the following provision:

"This insurance is granted upon condition that all premiums be promptly paid when due, and failure to pay any premium or any part thereof when due, or failure to pay at maturity any note given for any premium, or any part of a premium, shall forfeit and cancel this contract and terminate all obligations of the company under this policy."

There is some testimony to the effect that only $5 was sent to the company, and that that was received as payment of the fee of the medical examiner, the custom

being for the company to pay the fee when the policy was accepted, but the assured to pay the fee when the policy was not accepted. The books of the general agents show that only the amount of the fee was paid; but there is evidence on the part of the plaintiff that enough more was forwarded to the company to make a total sum of $16.

Notwithstanding the proof of the custom that the company's part of the first premium was charged to the soliciting agent at the end of the delivery period, which was sufficient to constitute authority to the soliciting agent to deliver policies and make his own arrangements about the collection of the first premium, still if the assured did not pay the premium at all, and the same was not actually paid to the company by the agent, the company had the right to declare a forfeiture under the provisions of the policy quoted above.

There is no contention that the premium was paid by the assured in money, but it is conceded that he gave notes for the premium, only a small portion of which he paid. There is some conflict in the testimony whether the company received its portion of the first premium. So, it was a question for the jury to determine whether the company had the right to declare a forfeiture on account of the nonpayment of the first premium. That question should have been submitted to the jury.

The two notes given for the premium were not paid, and the soliciting agent at Hope surrendered those notes and took another note for the whole amount, which he testified he forwarded to the general agents at Little Rock. That note was not mature at the time the policy was taken up and cancelled, according to the testimony of Jarrett, the soliciting agent. The evidence is silent on the question as to what became of that note, though there is no evidence that it was ever paid. If it is true, as stated by the soliciting agent, that that note was forwarded to the general agents, who, confessedly, had authority to accept notes, that constituted a waiver of the payment of the premium in money; but upon the maturity of that note and nonpayment thereof, according to the

strict letter of the contract as above quoted, the company had the right to declare a forfeiture. Even though the note was immature at the time of the surrender and cancellation of the policy, still, if the assured surrendered the policy without insisting on waiting for the maturity of the note, the surrender of the policy was effective for the purpose of cancelling the contracts. That constituted an abandonment by mutual consent.

This court, in the recent case of *Missouri State Life Insurance Co.* v. *Hill*, 109 Ark 17, quoted with approval the following from Cooley's Briefs on the Law of Insurance, § 2883:

"The rule as to the inability of the insurer to cancel the policy on its own initiative does not prevent an abandonment of the contract by agreement of the parties. And in the absence of fraud or coercion, such abandonment, if definite, will be effective, though at the time the company is erroneously claiming the right to forfeit or avoid the policy on account of some alleged violation of its conditions."

So, in the present case, though the note was immature, the company was insisting on the right to cancel, and if without any fraud the policy was surrendered, it amounted to an abandonment.

The jury might have found, under the testimony, notwithstanding the statement of Mrs. Cox, that she surrendered the policy solely because the agent told her that her husband had requested it, and that the policy was voluntarily surrendered, and that there was a complete abandonment. This might have been inferred from the fact that neither the plaintiff nor her husband ever requested the return of the policy, or offered to pay the note, though her husband lived about six months after the policy was taken up. Those questions, relating to the voluntary surrender of the policy, and the abandonment thereof by failing to pay the note, and asking for return of the policy, ought to have been submitted to the jury.

It is insisted that there can be no liability in this case for the reason that the plaintiff failed to furnish proof of loss.

In view of another trial of the case, we deem it proper to say that, if the company, through its agent, wrongfully obtained possession of the policy through fraudulent misrepresentation, and declared a forfeiture without any right to do so, this was tantamount to a denial of liability, which would constitute a waiver of proof of loss.

For the errors indicated in giving the first instruction at the instance of plaintiff, and in refusing to submit the question of the company's right to declare a forfeiture, the judgment is reversed and the cause remanded for a new trial.