ILLINOIS BANKERS LIFE ASSURANCE CO. *v.* PETRAY.

4-4863

Opinion delivered December 13, 1937.

*L. W. Melburg* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Glover & Glover,* for appellee.

McHANEY, J. Appellee and his wife, Pearley L. Petray, each carried a policy of life insurance in appellant company from February 9, 1917. Her policy was in the sum of $1,000, and he was named beneficiary therein, with power reserved therein to change the beneficiary in the manner set out in the policy. The premium on each policy was payable quarterly, the total quarterly premium on both policies amounted to $10.54 of which the quarterly premium on her policy was $3.34. A quarterly premium became due on April 1, 1930, on both policies and each provided for a grace period of thirty days in which to pay the premium. The premium was not paid on April 1,

but on April 26 appellee mailed a check in the amount of $10.54 to appellant at its home office in Monmouth, Illinois, to cover said premium. The check was received on April 28th at the home office and premium receipts were mailed to appellee. The check was deposited for collection, but, when presented to the Malvern bank on which it was drawn, payment was refused on account of insufficient funds, and the check returned in the course in which it came, and in due time was received by appellant with the notation showing that it had not been paid. Just when the check was returned to appellant at its home office is not shown, but on May 10, appellant wrote appellee to the effect that his check for $10.54 in payment of the premiums on said policies had been returned by the Bank of Malvern with the notation, "not sufficient funds," and that same was enclosed therein. Appellee's attention was called to the fact that the receipts issued provided that all premiums were payable in cash, but that checks were accepted conditioned upon their being honored on presentation for payment, and that the receipts sent them were invalid and of no effect. The letter continued:

"This does not prohibit you from applying for reinstatement. We inclose herewith regular applications which you may complete and return to us together with a new remittance, preferably bank draft or postal money order, in the amount of $10.54. If you are still insurable we shall be glad to give the same our best attention.

"Your prompt attention to this matter will not only enable us to consider this reinstatement quicker, but will enable you to enjoy the protection these policies provide."

On May 12, 1930, appellee wrote appellant the following letter:

"Enclosed find check, $10.54, to take up chk. issued 4/26/30 for quarterly payment on ins. also papers properly filled out.

"Had the chk. been 1 day later in getting in it would of been paid as I had the money there the next day. Am sorry that this happened. Once before I made out chk for same purpose and layed it down and got it misplaced; thought I had mailed it until I happened to find it.

"Will be more careful from now on."

The application for reinstatement blanks, which both he and his wife signed and which he returned in his letter just mentioned, contained the following provisions:

"I, the undersigned, having forfeited all claim under policy No. 72724 in the Illinois Bankers Life Assurance Company, except as may be in said policy otherwise provided, which policy has lapsed for nonpayment of premium hereby apply for reinstatement of insurance. . . .

"The company reserves the right to require complete examination to be executed by one of the company's medical examiners at the policyholder's expense.

"I understand and agree that the said policy shall not be restored until this application shall be approved by the medical director of the company, . . ."

The application for reinstatement and a new check in the amount of $10.54 were received by appellant, and it, thereupon, directed appellee and his wife to go before Dr. Hodges at Malvern for a medical examination. The examinations were completed on May 30th and a report signed by Dr. Hodges was sent to appellant, which, as to appellee's wife was to the effect that she was not a fit subject for insurance, his conclusion being based upon the fact that she was greatly overweight and had high blood pressure. These reports were submitted to appellant, and it accepted appellee's application for reinstatement and rejected that of his wife, notifying them by letter of the company's decision. The letter to Mrs. Petray under date of June 5, 1930, is as follows:

"Your examination for reinstatement of your policy has been received and we are sorry to find that you are not insurable at this time, and we must decline to reinstate your policy. Enclosed you will find our check number 4280 for $3.34, refund of premium sent us since your policy was allowed to lapse.

"It is very unfortunate that you allowed your policy to lapse and thus necessitate this action. As you probably know, you are over the maximum permissible weight and have an abnormal blood pressure. Due to these con-

ditions, we could not possibly consider you safely insur-able.'' This letter was signed by the medical director.

The check for $3.34 made payable to Mrs. Petray, mentioned in the above letter, was cashed at the Bank of Malvern on July 15, 1930. Appellee continued to pay the premiums on his policy, but neither he nor his wife made any complaint of appellant's action in rejecting the application of Mrs. Petray for reinstatement, and never offered or tendered any further premiums during her lifetime.

Mrs. Petray died on August 11, 1936. Appellee, for the first time, on September 19, 1936, made complaint to appellant that he had been mistreated in the rejection of his wife's application for reinstatement, and on the 28th day of October, 1936, filed this suit to recover the face value of the policy, $1,000, less the premium she would have paid from the time of the rejection of her application for reinstatement until her death, with penalties and attorney's fees. At the conclusion of the evidence, appellant requested a directed verdict in its favor which was refused by the court. The jury returned a verdict for appellee in sum of $915, to which the court added a 12 per cent. penalty and $150 in attorney's fees. The case is here on appeal.

We think the court erred in refusing to direct a verdict in appellant's favor at its request, if for no other reason, on the ground that the policy was rescinded by mutual agreement when Mrs. Petray accepted and cashed the check which appellant sent to her when it refused to reinstate her policy, and by her acquiescence therein for more than six years thereafter. Presumably, had Mrs. Petray outlived her husband, the appellee, no complaint would ever have been made of appellant's action in refusing to reinstate the policy. He waited for more than six years to make any complaint about it and it was more than a month after his wife's death before he complained to appellant that he had received unfair treatment. We think that had appellee acted promptly, he might have prevented a forfeiture of this policy. He testified that he went into the bank the next day after his check had been

turned down, learned of this fact, made a deposit, and, on that day wrote appellant to return the check to the bank on which it was drawn for payment as there were ample funds then on hand to pay same and that this was in the period of grace. His testimony in this respect may or may not be true. It is undisputed that his unpaid check was returned to him in appellant's letter of May 10, 1930, and, in his letter in response thereto under date of May 12th, he makes no mention of having written appellant a letter regarding the former $10.54 check on which payment had been refused. But whether he wrote such a letter or not can make no difference since appellant notified Mrs. Petray that her application for reinstatement had been rejected and inclosed its check for refunding the amount of her premium, which she accepted and cashed, thus ratifying and approving appellant's action in the premises. Appellant accepted said second $10.54 check in payment of the quarterly premium conditionally, that is, subject to acceptance and approval of their applications for reinstatement. As said in Couch on Insurance, § 688: "Thus acceptance and retention of premiums during negotiations for reinstatement, and while awaiting for a reasonable time the furnishing by insured of a health certificate do not waive a forfeiture based upon delinquency in payment." See, also, *Carodine* v. *Southern National Insurance Company,* 193 Ark. 376, 99 S. W. 2d 586. The application for reinstatement, hereinabove set out, further recognizes appellant's rights in the premises and in *Dabbs* v. *Guarantee Fund Life Company,* 192 Ark. 329, 92 S. W. 2d 202, we said: "By the express terms of the policy it is stipulated that a re-examination of the insured would be required, in the event of a lapse through nonpayment of premium. Such provisions are valid and must be enforced, when invoked. *Woodmen of the World* v. *Jackson,* 80 Ark. 419, 97 S. W. 673. The insured was advised in his lifetime that his policy had lapsed, and he submitted to a medical re-examination to secure reinstatement. He was advised of his rejection on account of unfavorable tests of his urine. There is no substantial proof of any fraud in this examination. The insured was apparently satisfied."

So, here, the insured, Mrs. Petray, was advised in her lifetime that her policy had lapsed and she submitted to a medical re-examination to secure reinstatement. She was advised of her rejection on account of the unfavorable condition of her health and a check was sent her refunding the amount of the premium which had been advanced. There is no proof of fraud in the examination as it was made by a physician who had treated her in the past. Neither she nor appellee expressed any dissatisfaction with the action of the company in rejecting her application for reinstatement.

The court erred in not directing a verdict for appellant, and the judgment will be reversed, and the cause dismissed.