## ÆTNA LIFE INS. CO. v. DODD.
### No. 11171.

Circuit Court of Appeals, Eighth Circuit.
April 25, 1939.

Rehearing Denied May 16, 1939.

E. L. McHaney, Jr., and S. Lasker Ehrman, both of Little Rock, Ark. (J. Paul Ward, of Batesville, Ark., and Grover T. Owens, of Little Rock, Ark., on the brief), for appellant.

Shields M. Goodwin, of Little Rock, Ark. (John C. Ashley, of Melbourne, Ark., on the brief), for appellee.

Before GARDNER and WOODROUGH, Circuit Judges, and OTIS, District Judge.

GARDNER, Circuit Judge.

This was an action at law brought to recover on a life insurance policy issued by appellant December 9, 1931, upon the life of Isaac L. Dodd. His wife, Flora B. Dodd, appellee here, was named as beneficiary. The policy contains provision that: "During the lifetime of the insured,

the right to receive all cash values, loans and other benefits accruing hereunder, to exercise all options, and privileges described herein and to agree with the Company to any change in or amendment to this policy shall vest alone in the insured."

The policy also contains provision that the beneficiary may be changed as often as desired, and that if any beneficiary dies before the insured, the interest of such beneficiary shall vest in the insured, unless otherwise provided.

The premiums as stipulated were paid in full so as to maintain the policy in effect until June 9, 1934. On that date a quarterly payment became due. Prior to the expiration of the days of grace, the insured paid the sum of $6.20 on this quarterly premium, and requested an extension of time for the payment of the balance due. The company issued an extension agreement, extending the time to August 9, 1934, but the payment was not made within that time. On August 25, 1934, an agency for the company received a check from insured in the sum of $12.20. On August 27, 1934, the agency wrote insured, advising him that his check was received too late to prevent lapsing the policy and enclosed with this letter a blank application for reinstatement. The insured was also advised by the same letter that his remittance of $12.20 was being held subject to his order, pending the company's decision on the matter of reinstatement.

On September 6, 1934, the insured executed an application for reinstatement and sent it to the agency, which in turn forwarded it to the home office of the company. The home office, on September 14, 1934, in response to this application, wrote to the agency requesting a medical examination of insured. On September 19, 1934, an additional check for $18.20 was received by the agency from the insured, and this was placed in a suspension account together with the previous payment. On September 20, 1934, the agency wrote the insured requesting a medical examination in support of his application for reinstatement. Insured not having answered this notification, the agency again wrote him on October 18, 1934, urging him to furnish proof of medical examination, but this request was not complied with.

On November 10, 1934, the agency sent to the insured, through its local agent, its check for $30.40, payable to the insured. The local agent delivered this check to the insured and advised him why it was being returned to him. On the face of the check appears the typewritten words, "Return payment on reinstatements $12.20 and $18.20 on policy N929—418, Dodd." The insured accepted the check, endorsed it and cashed it on November 14, 1934. On the back of the check, just above the endorsement of the insured, appears the following: "Endorsement of this voucher check constitutes a receipt in full for account stated on reverse side." Nothing further was done with reference to any attempt to reinstate the policy. The insured retained the money received on cashing the check, and some five months later, on April 9, 1935, died.

At the conclusion of all the testimony, both parties moved for a directed verdict, and the court granted plaintiff's motion, directing a verdict in her favor for the full amount of the policy. From the judgment entered, defendant prosecutes this appeal, seeking reversal on the ground that (1) the policy lapsed and was not reinstated; (2) there was no cash loan or surrender value in the policy which could be used in payment of the premium due; and (3) the parties rescinded the contract by mutual agreement. In our view of the issues, it will only be necessary to consider appellant's third contention.

The parties seem to have been in agreement during the life of the insured as to the relative rights of the parties. The insured was advised that the policy had lapsed and on the theory that it had lapsed he accordingly made application for its reinstatement. This was declined because he failed to furnish evidence of medical examination. After frequent requests had been made of him to submit evidence of such examination, the amount of the payments tendered pending the application for reinstatement was returned to him and accepted and retained by him. No further negotiations were had with reference to the matter. No claim was asserted nor protest made by the insured although he lived for approximately five months after this event.

As has been observed, the policy contained provision for a change of the beneficiary or for an assignment upon request of the insured. The consent of the beneficiary not being required, she acquired no vested right in the policy and the insured was at liberty to change the beneficiary, assign the policy, or to make settlement

and cancel it, Morgan v. Penn Mutual Life Ins. Co., 8 Cir., 94 F.2d 129, 131.

In the last cited case, the insured had named his daughter as one of the beneficiaries in a life policy which reserved in him the right to change the beneficiary. He later, without the knowledge of the beneficiary, made settlement under the policy. Upon his death, the original beneficiary brought suit, but we held that as she had no vested right, the insured was at liberty to make such disposition of the contract as he saw fit. In the course of the opinion we said: "Irrespective of any provision in the policy as to cancellation, it may be canceled by mutual agreement so as to terminate the rights and obligations of the parties, if there are no vested rights in the beneficiary or other third party. But, where the policy itself reserves to the insured the unconditional right to change the beneficiary, and also the right to assign the policy, there would seem to be no doubt of his right to surrender it upon such consideration as should meet his approval."

As a general proposition, those competent to contract are equally competent to rescind a contract already made. A contract which has not already been fully performed may be rescinded by the mutual consent of the parties, the discharge of one party from the obligation to perform being sufficient consideration for the discharge of the other party from his obligation to perform further. Missouri State Life Ins. Co. v. Hill, 109 Ark. 17, 159 S.W. 31; Morgan v. Shackleford, 174 Ark. 337, 295 S.W. 46; Afflick v. Lambert, 187 Ark. 416, 60 S.W.2d 176; Illinois Bankers Life Assur. Co. v. Petray, 195 Ark. 144, 110 S.W.2d 1070; Davis v. New York Life Ins. Co., 8 Cir., 47 F.2d 1051; Kincaid v. New York Life Ins. Co., 5 Cir., 66 F.2d 268; Beeman v. Kansas City Life Ins. Co., Mo.App., 104 S.W.2d 391.

In Missouri State Life Ins. Co. v. Hill, supra, the insurance company, as here, had returned checks covering premiums paid pending application for reinstatement. In the course of the opinion it is there said [109 Ark. 17, 159 S.W. 32]: "If it be assumed that the insurance company had no legal rights under the terms of the insurance policy and of the premium note under the circumstances to forfeit the policy, the fact remains that it claimed the right to do so and exercised that right. * * *

The case is not one where the company is seeking after the death of the insured to declare the insurance forfeited; but the question is whether or not, under all the circumstances adduced in evidence, the contract of insurance was terminated by the parties themselves during the insured's lifetime, and we hold that it was."

The facts in Illinois Bankers Life Assur. Co. v. Petray, supra, are similar to those in the instant case. In that case there were two policies of life insurance, running respectively to husband and wife. The premiums were payable quarterly on each policy. Premiums on the husband's policy were regularly paid until April 1, 1931, and on April 26, 1931, he mailed a check to cover the premium on both policies. This check not having been paid, the insurance company wrote to the insured husband and wife that their policies had lapsed. Following negotiations, the husband's policy was reinstated, but the company refused to reinstate the wife's policy, but wrote her stating that reinstatement was denied and returned to her the premium which had been paid pending application for reinstatement. Neither husband nor wife made any protest to the rejection of the application for reinstatement and offered no further premiums during her life. On her death, action was instituted on the policy issued on her life. In the course of the opinion it is said [195 Ark. 144, 110 S.W.2d 1071]: "We think the court erred in refusing to direct a verdict in appellant's favor at its request, if for no other reason, on the ground that the policy was rescinded by mutual agreement when Mrs. Petray accepted and cashed the check which appellant sent to her when it refused to reinstate her policy, and by her acquiescence therein for more than six years thereafter. * * * But whether he wrote such a letter or not can make no difference, since appellant notified Mrs. Petray that her application for reinstatement had been rejected and inclosed its check for refunding the amount of her premium, which she accepted and cashed, thus ratifying and approving appellant's action in the premises."

Here there is a claim that the policy had some loan value, though no such claim was asserted by the insured. The company, however, has always contended that the policy had lapsed. The insured fully understood the company's contention. In fact, he acquiesced in that contention when

he filed his application for reinstatement. He was, of course, chargeable with knowledge of the provisions in his policy and his rights thereunder. If we should assume that the plaintiff established a contract in existence on November 19, 1934, he at that time accepted the check for $30.40, cashed it, and kept the money. He was advised not only of the rejection of his application for reinstatement but why the proffered premiums were returned to him. As has been observed, the check by which these premiums were returned to him showed on its face that it was given to cover these proffered premium payments. There is no claim of mistake, overreaching, or fraud in this case. The action is one at law to recover on a contract which the evidence conclusively shows had by mutual consent been rescinded. The insured apparently realized that he could not make such a showing as would entitle him to reinstatement. He was in poor health and said to the local agent: "I can't fill it (application for reinstatement) out because I can't answer this truthfully. I might be able to a little later."

We can not escape the conclusion, under the undisputed evidence in this case, that there was no basis for recovery in this case because the contract had been rescinded by mutual consent. The judgment appealed from is therefore reversed and the cause remanded for further proceedings not inconsistent with this opinion.