11992

GINYARD v. LINCOLN RESERVE LIFE INSURANCE CO.

(133 S. E., 227)

1. EVIDENCE—SUPREME COURT WILL TAKE JUDICIAL NOTICE THAT INSURANCE COMPANIES HAVE MEDICAL EXAMINERS TO WHOM REPORTS ON APPLICANTS ARE SENT, AND THAT FINAL ACTION IS GOVERNED BY EXAMINER'S ADVICE.—Supreme Court will take judicial notice that every insurance company has its medical examiners to whom reports on applicants are sent, and that final action is governed by advice received from examiner.

2. INSURANCE—VERDICT WAS PROPERLY DIRECTED FOR INSURER IN ACTION ON LIFE POLICY, WHERE INSURED, ON LAPSE OF POLICY, FAILED TO EXERCISE OPTION, AND COMPANY THEREUPON APPLIED PREMIUMS TO PAID-UP INSURANCE AND LATER DECLINED TO REINSTATE INSURED.—Where, after failure of insured on lapse of life policy to exercise option provided in policy, insurer, in accordance with provision, applied premiums to paid-up insurance, and thereafter declined to reinstate insured, insurer was properly given a directed verdict in action by beneficiary on policy.

3. INSURANCE.—Whether insurer, by accepting payment of 80 cents from insured for additional paid-up insurance, waived requirement of loan certificate, *held* for jury.

Before F. P. McGowan, SPECIAL JUDGE, Orangeburg, June, 1924. Affirmed in part, and in part reversed, and new trial granted.

Separate actions tried together by agreement, by Lydia Ginyard, in her own right and as administratrix of the estate of Robert Ginyard, deceased, against the Lincoln Reserve Life Insurance Company. From the judgment plaintiff appeals.

*Messrs. Wolfe & Berry,* for appellant, cite: *Clauses of insurance policy to be construed together:* 128 S. E., 416. *Policy to be construed most strongly in favor of insured:* 118 S. E., 609. *Policy to be saved if possible:* 102 S. C., 125.

*Messrs. J. L. Drennen, J. R. Salley* and *Lide & Felder,* for respondent, cite: *Waiver and estoppel distinguished:* 127 S. E., 838; 27 R. C. L., 905. *Similar policy construed:* 129 S. E., 84.

May 20, 1926.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE R. O. PURDY.

Robert Ginyard died on March 5, 1923. He had taken out two life insurance policies with the defendant respondent company, each in the sum of $1,000, and numbered, respectively, 14986 and 16613. The first named policy was

payable to his estate, and the last named policy was payable to Lydia Ginyard, his wife.

An action was brought upon these two policies under separate causes of action, and, for convenience, by agreement, the causes were tried together; otherwise there would have been separate actions.

The complaint contains the usual allegations in an action upon insurance policies. The answer is quite lengthy, and need not be repeated here. As to the first named policy, the respondent pleads, by way of defense, a failure on the part of the insured to pay the premium, and that the insured, having certain options in such cases, and having failed to exercise either of the options which he had, the respondent exercised the option which it had under the policy, in such event, to apply the cash surrender value of the policy to paid-up insurance, and that the paid-up insurance was so applied, amounting to $114, and the company notified the insured of such application of the fund on March 2, 1922, and that, after the death of the insured, the $114 was paid to Lydia Ginyard as administratrix of the estate of Robert Ginyard, and was accepted and received by her as such administratrix.

A similar defense was interposed as against the second named policy, except that it is alleged that $30 is the amount of the paid-up insurance which became payable to the beneficiary upon the death of Robert Ginyard, and that this sum was tendered to the beneficiary, and that the company has ever since been ready, able, and willing to pay it.

The case was heard before Hon. F. P. McGowan, as Special Judge, who directed a verdict for the respondent upon the first named policy, and, going into a series of calculations, directed a verdict for the appellant upon the second policy in the sum of $93.30. The appellant has appealed from the judgment as to both policies.

Considering the grounds of appeal as to the policy No. 14986, payable to the estate of the insured:

This policy was issued September 21, 1918, and three premiums were paid, carrying the policy to September 21, 1921, but the premium falling due on the last named date was not paid. In these circumstances, within one month after such default, the insured might have surrendered the policy and have elected to take one of the following options, viz.: (a) To receive the cash surrender value of the policy; (b) to have insurance for the face amount of the policy, less any indebtedness to the company, and to continue in force from the date of default for such term as the cash surrender value would have purchased, as provided in the policy, but without participation and without the right to procure loans or to have the cash surrender value; or (c) to purchase non-participating paid-up insurance, payable at the same time and under the same conditions as contained in the policy.

The policy contains the following provision: If the insured shall not, within 30 days after default, surrender this policy to the company at the home office, for its cash surrender value, as provided in option (a), or term insurance, as provided in option (b), the cash value, less any indebtedness, will be applied to the purchase of paid-up insurance, as provided in option (c).

The insured did not surrender the policy and accept options (a) and (b), and the company, under the third privilege of the option, converted the policy into paid-up insurance, amounting to $114, and, as has been hereinbefore stated, this sum was paid to the respondent as administratrix, and was afterwards tendered back to the company, and the company declined to receive it.

The contention of the appellant is that all the clauses of the policy must be construed together (*Barron v. Bank,* 131 S. C., 441; 128 S. E., 416), that the provisions of the policy must be construed most strongly against the insurer and in favor of the insured (*Wheeler v. Insurance Co.,* 125 S. C., 320; 118 S. E., 609), and, if the policy of insurance can be

lawfully saved, this will be done (*Scott v. Insurance Co.,* 102 S. C., 125), 86 S. E., 484.

The appellant further contends that the provision permitting the company to convert the policy into paid-up insurance under the third option is unreasonable and void, in the light of the other provisions of the policy.

After the policy had lapsed, the insured made application for a reinstatement of the policy. He did not apply to have extended insurance, under option (b), referred to. The company procured Dr. T. H. Dreher, a reputable physician at St. Matthews, to make the physical examination, so that a health certificate might be furnished to the company. Upon making such examination, Dr. Dreher made a highly favorable report as to the condition of the insured.

In a letter of March 2, 1922, the company advised the insured that the health certificate was not found to be satisfactory to its medical department, and declined to reinstate policy No. 16986, and advised the deceased that the value of his paid-up policy at the time of his death would be $114. The appellant claims that this action on the part of the company was a fraud on the rights of the deceased, and that the company had no right to arbitrarily reject the application for reinstatement.

The insured had the policy in his possession, and was acquainted with its terms. He had a right to accept either one of the three options which he deemed to be most beneficial to himself, and declined to make his election; whereupon the respondent exercised the right expressly given it under the terms of the policy, and converted the cash value into paid-up insurance, amounting to $114.

The company had no right to exercise this option so long as the option remained to the insured to exercise a different option if he saw fit. After the death of the insured, his personal representative received the money. There is no evidence going to show that there was any fraud or unfair dealing on the part of the company which prevented the in-

sured from accepting the option most beneficial to him; nor is there any evidence tending to show that his personal representative, the appellant, was induced by any fraud or unfair dealing to accept the $114; nor is there any evidence tending to show that the company had bound itself to abide by the report which might be made by Dr. Dreher.

The fact is so well known that the Court will take judicial notice of it, that every insurance company has its medical examiners to whom these reports are sent, and that the final action is governed by the advice received from those examiners.

As stated, the insured was not applying as a matter of right, to be allowed to open up the default and take one of the different privileges offered by the options, but he was, as a matter of grace, applying to the company for a reinstatement, and the company had a right to accept or decline a reinstatement, and its conduct in this case in no way misled the deceased, and did not cause him to do or forego the doing of any act which was to his prejudice. The rights of both parties were already fixed, and the company did no more than to decline, after investigation, to open up a situation that was already closed.

His Honor, therefore, committed no error in directing a verdict for the respondent on this issue, and the judgment on this issue is affirmed.

As to policy 16613:

This policy was issued on December 30, 1918, and three premiums were paid. There was some question about a premium for one year having been credited without payment, but that does not enter into the settlement of the case. Under date of November 28, 1922, the insured wrote the company asking for a loan to pay the premium which was to ·fall due on December 30, 1922. The company on December 13, 1922, replied, stating that he owed a balance of $21.17 on the note given for part settlement of the 1921 premium, but that, after the 1922 premium was paid, the loan value

5—S. C.—135.

of the policy would be $84, and suggested to him that by making this loan and sending on .80 cents additional, he would be able to pay his premium which fell due December 30, 1922, amounting to $56.17.

Adding the interest on this note and the loan proposed to be made, and then adding the premium, the total amount was $84.80, so that it took just 80 cents more than the loan value of the policy to finance the premium for another year. In order to complete the transaction, the company inclosed a loan certificate, and instructed the insured how to execute ·it, and directed him, when executed, to return it with a post office money order for 80 cents, and that he would then owe nothing more on the policy until the next premium due date, December 30, 1923.

Had the insured complied with these directions, this issue would not now be before this Court. He did not comply, but on January 22, 1923, he asked the company that the time be extended, and a prompt reply was mailed to him that it could not make any settlement other than that proposed in its letter of December 13, 1922, and he was again urged to execute the loan certificate and return it with 80 cents, not later than January 30, 1923, as the month of grace would expire on that day.

On January 29, 1923, the insured inclosed the post office money order for 80 cents "for interest on policy No. 16613." The insurance company claims that the 80 cents was for part interest on the note for $21.17, and they so applied it, stating, "as directed in Ginyard's letter."

This Court does not take that view of the transaction. The insured evidently intended to comply with the · request of the company, but failed to send in the loan certificate. True, he owed the $21.17 and the interest on it, and was bound in good faith to pay it, but there is no suggestion that he was attempting in making this remittance, to discharge the interest on that sum, or that it was sent to be so received, but it was sent as a part of the means of

keeping in force the policy for another year. The insured so understood in sending it, and the company should have so received it. The fact that it was denominated as interest on policy No. 16613 by the sender did not authorize its application to the note for $21.17. It was the sum, over and above $84 necessary to keep his policy in force for another year, and, that being the loan value of the policy, the question should have been submitted to the jury, whether by receiving and retaining the 80 cents, the company intended to waive the requirement of a loan certificate being sent in, and as to the merits of which we express no opinion. We simply hold that there was some evidence of waiver, and the issue should have been passed upon by the jury, and there was error on the part of his Honor in directing a verdict.

The judgment as to this issue is reversed, and the case is remanded to the Circuit Court for a new trial as to this cause of action.

New trial granted as to this cause of action.

MESSRS. JUSTICES WATTS and MARION and MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE concur.

MR. JUSTICE COTHRAN (concurring and dissenting) : I concur in the conclusions of Mr. Justice Purdy so far as policy No. 14986 is concerned, but dissent as to policy No. 16613, which alone I will discuss.

This policy was issued on December 30, 1918, for $1,000; the annual premium was $56.17. The premium due at the time the policy was issued, carrying the insurance from December 30, 1918, to December 30, 1919, was paid, as was also the premium due December 30, 1919, carrying the policy from that date to December 30, 1920. The premium due on December 30, 1920, was paid by cash $20, and the execution of a premium loan note for $36.17, carrying the insurance from that date to December 30, 1921. The note for $36.17 was payable April 15, 1921, upon which the insured paid on April 30, 1921, $15; it was extended to May 15, 1921, later to April

15, 1922, and to December 30, 1922, leaving a balance unpaid on December 30, 1922, of $21.17, which has never been paid except 80 cents received by the company from the insured under the circumstances hereinafter detailed, and applied to the interest upon this note. The premium due on December 30, 1921, has never in any way been paid. From the testimony of the officers of the company, this default appears to have been overlooked entirely, due to an error in the books. The Circuit Judge found as a fact that "the testimony clearly shows that on December 30, 1921, the premium was not paid," from which conclusion there is no exception.

The premium due on December 30, 1922, was not paid. Before its maturity, on November 28, 1922, the insured wrote to the company asking it to lend him the money with which to pay the premium which was to become due on December 30, 1922. The company replied on December 13, 1922, offering him a loan of $84 upon his policy, out of which would be paid the $21.17 extended loan note due December 30, 1922, interest $2.42 upon it and interest, in advance $5.04 upon the new note of $84 and the premium $56.17 due December 30, 1922. The premium loan note of $84 would lack 80 cents of liquidating these several items, thus:

| | |
|---|---:|
| Premium .................................$ | 56.17 |
| Loan note outstanding ....................... | 21.17 |
| Interest on same .......................... | 2.42 |
| Interest in advance on $84 note .............. | 5.04 |
| $ | 84.80 |
| New loan ................................. | 84.00 |
| Deficiency ...........................$ | .80 |

The company accordingly transmitted to the insured a blank loan note or certificate for $84, and directed him to "sign with ink in the presence of a witness and return, to-

gether with a post office money order for 80 cents," and that upon its receipt the company would "grant the loan, return the note (for $21.17, interpolated), to you properly canceled, which has earned $2.42 interest, receipt for your premium due December 30th, and a receipt for your policy, which will indicate that the interest of $5.04 has been paid on the new loan to maturity. You would then be due nothing more on your policy until the next annual premium falls due on December 30, 1923." The insured did nothing until January 22, 1923, when he wrote asking for an extension of 15 or 20 days. To this request the company replied on January 24, 1923, stating:

"The settlement offered in our letter of December 13th, is the very best that the value in your policy will permit. If you will send us a post office money order for 80 cents *and sign the loan certificate for $84 as requested,* and send to reach this office not later than January 30th, we will complete the settlement which will protect your policy until December 30, 1923."

I cannot conceive of a plainer business proposition than this. It was made first on December 13, 1922, and repeated on January 24, 1923, in terms that any one of common understanding must have appreciated.

On January 29th, the insured, *without returning the signed loan certificate* or the policy, remitted a post office money order to the company for 80 cents "for interest on policy No. 16613." It appears to have been received by the company on January 31, 1923, cashed on February 2d, and applied as a credit upon the interest due on the outstanding $21.17 note.

The insured died on March 5, 1923, and thereafter the company, acting upon the contention that the policy had lapsed for nonpayment of the premium due on December 30, 1922, and upon its policy right to apply the cash surrender value of the policy, $1.14, less all indebtedness of the insured, to paid-up insurance, tendered to the plaintiff $30

as the amount of such paid-up insurance, calculated as follows, which was refused:

Cash surrender value ......................$  114.00
Less premium of December 30, 1921,
  which had not been paid...........$ 56.17
Interest to March 5, 1923 ............    3.99
Loan note December 30, 1922 ..........   21.17
Interest to December 30, 1922 ........    2.42
Interest to March 5, 1923 ............     .25      84.00

Balance ..............................$    30.00

Upon the trial, the presiding Judge directed a verdict in favor of the plaintiff for $93.30, which he ascertained to be the amount of paid-up insurance to which the insured was entitled, calculated as follows:

Cash surrender value ......................$  114.00
Unpaid loan note .........................    21.70

Paid-up insurance ......................$    93.30

Assuming the correctness of the figures, the balance should have been $92.30 and not $93.30. But the note was for $21.17 and not $21.70, and the statement omits the interest on the $21.17 note, $2.42 and 25 cents, and the unpaid premium of December 30, 1921, $56.17, with interest, $3.99. The total of the omitted items:

$    2.42
.25
56.17
3.99

$  62.83

Less difference balances $21.70 and $21.17......    .53

$  62.30

Error in subtraction ......................    1.00

$  63.30

—deducted from the amount found by the Circuit Judge, $93.30, leaves $30, the exact amount tendered to the plaintiff, and all that she was entitled to. These errors are, however, now beyond the power of this Court to correct, as the defendant has entered no exception thereto.

It is contended by the plaintiff-appellant that there was some evidence of a waiver by the company which should have been submitted to the jury, and that is the conclusion of Mr. Justice Purdy; the idea being that, as the insured was endeavoring to comply with the proposition of the company, in remitting the 80 cents, the company had no right to apply that sum to the interest on the $21.17 note, and that its receipt and retention of it was some evidence that it intended to waive the requirement of a loan certificate. At that time, January 31, 1923, the insured owed the company:

The outstanding loan note ....................$ 21.17
Interest up to December 30, 1922 ..............   2.42
Interest up to January 31, 1923 ...............    .12
Premium due December 30, 1922 ..............  56.17
Interest up to January 31, 1923 ...............    .28

    Total ...............................$ 80.16

—(not to speak of the premium due on December 30, 1921, no part of which had been paid). For this indebtedness the company had no other showing than the outstanding loan note of $21.17. Is it conceivable that the company, for 80 cents, intended that it should have no security at all for the difference, $56.45? The object in requiring the loan certificate was to acquire a lien upon the proceeds of the policy as security for:

The loan note ...............................$ 21.17
Interest .....................................   2.42
Premium due December 30, 1922 ..............  56.17
Advance interest ............................   5.04
                                             $ 84.80

Did the company intend by accepting the 80 cents to waive this requirement which it had made on December 13, 1922, and repeated in January, 1923? I do not think that there is the remotest inference to be drawn of such intention. Whether it had the right to credit the 80 cents on the $21.17 note or not, the fact that it did so is a conclusive negation of its intention to waive the execution and return of the loan certificate *with the policy.* If the company had made no application of the 80 cents, had simply received and retained it, there might have been the shadow (not more) of an inference of a waiver, but, in view of its ultimatum twice communicated and the application of it to the note, I do not think that there is even the "shade of a shadow" of waiver.

If it should be found by the triers of fact that the company, by its receipt and retention of the 80 cents, waived the execution and return of the loan certificate with the policy, a result not inconceivable in a jury trial, the conclusion would inevitably follow that it had for 80 cents agreed to keep alive the policy, which had lapsed, until December 30, 1923, with no lien whatever upon the proceeds of insurance for the premium which had been past due since December 30, 1922, in face of the fact that it had specifically and emphatically refused to grant an extension and twice required the execution of the loan certificate.

The modern conception of waiver stubbornly opposes the sound principle that it is the *"voluntary relinquishment of a known right,"* and insists, regardless of the intention of the party whose right is in question, to a juridical construction of his conduct upon the disclosure of some fact a little out of the ordinary and open to question.

Here is a case where the insured has made default in the payment of his premium; he notified the company beforehand that he had to do so unless he received assistance; he was offered as fair terms as he could ask. This was on December 13th, nearly three weeks before his premium was

due; he did nothing, absolutely nothing, until January 22d, when he asked for an extension. This was denied, and the proposition of December was renewed. He waited until one day before the month of grace was out, when he repudiated all of the proposition except the 80 cents remittance. The company had no notice whatever that when he remitted the 80 cents he meant to do anything more than his communication indicated to pay "interest on policy No. 16613." Could the insured have possibly thought that he was complying with the proposition twice submitted to him in the plainest terms? I do not think so. He said that it was "for interest," and the company so applied it. What right has he or his beneficiary now to complain, or to insist that for the 80 cents the company was obligated to carry his insurance for another year? That is what the waiver contended for means.

Implied waiver is essentially a matter of intention, and to establish it there must be some declaration or act from which the insured might reasonably infer that the insurer did not mean to insist upon a right which, because of a change of position induced thereby, it would be inequitable to enforce; it is essential that there be a recognition of the continued validity of the policy after a knowledge of the forfeiture. See the long list of authorities cited by the writer in his dissenting opinion in the case of *Whaley v. Insurance Co.,* 124 S. C., 173; 117 S. E., 209, sustaining this proposition. Also 32 C. J., 1341.

Applying this principle to the facts of the case at bar, I do not think that there is a single circumstance tending to show that the company intended to recede from its proposition twice submitted and emphatically insisted upon, or that it in any way led the insured to believe that his policy was still in force.

The question is really one of contract, whether the minds of the parties have met upon the terms of a completed contract, rather than one of waiver. The insured had defaulted

in the payment of the premium due on December 30, 1922; he had until January 30, 1923, either to pay the defaulted premium or to enter into some agreement with the company relieving him of that obligation. The company made him a proposition which as a matter of fact he never accepted, but in effect made a counter proposition that the company would recede from its proposition and carry his policy for an additional year for 80 cents. There is not a particle of evidence that this modification was accepted by the company; in fact, the only evidence is to the contrary, as shown by the application of the 80 cents to the $21.17 note.

I think, therefore, that the judgment of the Circuit Court should be affirmed as to both policies.