LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE
v. GOODWIN.

4-3600

Opinion delivered November 26, 1934.

*Moreau P. Estes* and *Streett & Streett,* for appellant.
*L. B. Smead* and *Lawrence E. Wilson,* for appellees.

SMITH, J. This suit was brought to recover on a policy of life insurance, and was heard in the court below on an agreed statement of facts reading as follows:

"1. It is agreed that the life insurance policy numbered 63572, in the sum of $1,000 was issued and delivered by the Life & Casualty Insurance Company of Tennessee to Harmon Goodwin on June 21, 1926; that semi-annual premiums were due thereon on June 15 and December 15 of each year; that all premiums were paid up to and including the 15th day of December, 1932; that on said date the policy lapsed for the nonpayment of the premium then due; that at the time of the lapse of the policy there was a loan outstanding against the same

in the sum of $82, and it had a reserve or loan value of $90, leaving a net reserve of $8 and an unearned interest credit thereon of $2.46, making an aggregate reserve value under the policy at the time of its lapse, December 15, 1932, and on the date of the death of the insured, August 28, 1933, of $10.46; that all premium notices were sent out and received by plaintiff in due time;

"1½. That upon the lapse for failure to pay said premiums the policy was then immediately commuted to a paid-up policy as provided under its terms.

"2. It is agreed that the insured received notice from the defendant company by letter of March 27, 1933, that his policy had lapsed, and that under the terms thereof he was entitled to paid-up insurance, in the sum of $32.43, but said letter did not notify insured the reserve value of his policy; that the insured died on August 28, 1933; that prior to his death he could read and write, and had the policy in his possession at all times after its delivery, and that he never exercised or made any effort to exercise any of the options provided under the 'non-forfeiture provisions' thereof.

"3. It is further stipulated and agreed that the amount of paid-up insurance the policy reserve would purchase at the time of forfeiture and death was and is the sum of $32.43, and that this sum has heretofore, by the defendant, been tendered to the plaintiff and the tender refused, and the amount paid in lawful currency into the registrar of the court.

"4. It is further agreed that, provided the 'non-forfeiture provisions' or 'automatic provisions' of the policy should be held of no effect, that the amount of the reserve was sufficient to extend the benefits provided in the policy under the extended insurance clause thereof beyond the date of the death of the insured.

"5. It is contended by the plaintiff that the amount of extended insurance is the face of the policy less any indebtedness outstanding, which is admitted to have been the sum of $82; it is contended by the defendant that the amount of extended insurance is reduced under the terms of this policy in the same *pro rata* as the outstanding indebtedness bears to the reserve value. It is admitted

that, if the provisions of the policy, including the last two paragraphs under the heading 'non-forfeiture provisions' are held to sustain the contention of the defendant, then the amount of extended insurance which the reserve of the policy would have purchased, provided the automatic provisions for commuting the insurance to a non-forfeitable paid-up policy should be held of no effect, would be the sum of $116.

"6. It is further agreed and stipulated that the reserve value of the policy was not sufficient, even if so applied, to have paid the premiums necessary to keep in force the policy, with all benefits therein provided, up to the date of the death of the insured.

"7. All questions of fact are herein agreed upon, and there are two issues presented to the court:

"First: Was this policy irrevocably commuted upon lapse for failure to pay premium, and upon the passing of the ninety days provided therein, to a paid-up non-forfeitable policy in the admitted sum of $32.43.

"Second: If the 'automatic non-forfeitable provisions' contained in said policy should be, by the court, held of no effect, then is the amount of the 'extended' insurance reduced in the same ratio as the admitted indebtedness of $82 bears to the reserve of $90, or is the full face of the policy extended less any indebtedness thereon."

The policy sued on contained the following provisions relating to the nonpayment of premiums and the effect thereof after as many as three annual premiums had been paid (as had been done by the insured in this case), to-wit:

"Non-forfeiture provisions. After three full annual premiums shall have been paid, if default be made of any payment of any subsequent premium, this policy shall automatically at time of lapse be unconditionally commuted to non-forfeitable paid-up insurance as provided below, payable at the same time, and on the same terms, save as to amount, as this policy.

"Within ninety days after said commutation, the insured, in lieu of this automatic unconditional non-forfeitable paid-up insurance, may upon written demand ad-

dressed to the home office of the company, receive either of the following options:

"(1)    Receive the cash surrender value of this policy, less any indebtedness to the company hereon. The cash surrender value shall be the reserve on this policy at the date of default, less a surrender charge, which in no case shall be more than two and one-half per cent. of the sum insured; or

"(2)    Receive extended insurance from date of default for an amount equal to the face of this policy, for such term in years and months from the date of default as is provided below, but without the right to loans and cash surrender values.

"The amount of the paid-up insurance or the term for which the insurance will be extended shall be such as the cash surrender value will purchase as a net single premium at the attained age of the insured at the date of default according to the New York Standard Intermediate Table of Mortality, with interest at the rate of three and one-half per cent. per annum.

"Any indebtedness to the company under this policy will be deducted from the cash surrender value; and such indebtedness will also reduce the amount of paid-up insurance, or the amount which is continued as extended insurance, in such ratio as the indebtedness bears to the cash surrender value at due date of premium in default."

The trial court rendered judgment for $1,000, the face of the policy, less $82, the amount of the policy loan, together with the statutory penalty and an attorney's fee. In rendering this judgment the court made the following declaration of law:

"Under these facts, the court declares the law to be, that it was the duty of the insurer, instead of exercising the option itself, after the nonpayment of the premiums on the 15th day of December, 1932, and commuting assured's policy to a non-forfeitable paid-up policy in the sum of $32.43, to have notified the insured that the $10.46 would buy that kind of commuted insurance, or, if he desired, he could take the option of extended insurance, and to have notified the insured how many months that sum would extend his policy of insurance. Without giv-

ing the assured that information, he wasn't bound to take the option selected by the insurer, or either of the others, until that information had been given him by the insurer; and in the meantime it was the duty of the insurer not to allow the policy to lapse, and to have used the funds towards keeping the policy in force. Having thus failed to notify the assured, he wasn't bound to take the option selected by the insurer, and the court finds, as a matter of law, that the reserve of $10.46, had it been applied towards the payment of premiums, it would have extended this policy, and the same would have been in force and effect, for a longer period than the date of the death of the assured, in August, 1933, and therefore at the time of assured's death in August, 1933, the policy was in full force and effect as extended insurance, and the plaintiffs, as beneficiaries, are entitled to recover the sum of $1,000; and that the judgment of the court will be in favor of the plaintiffs for the sum of $1,000, together with twelve per cent. penalty, as provided by statute, and a reasonable attorneys' fee.''

The case of *Metropolitan Life Insurance Co.* v. *Stewart,* 188 Ark. 903, 68 S. W. (2d) 1017, is cited in support of this declaration of law and the judgment rendered pursuant thereto.

The policy there sued on was a participating contract, which required the company, on the 31st day of December of each year, to ascertain and apportion any divisible surplus accruing thereon. It was there said: ''The undisputed testimony reflects that the premiums had been paid for full five years and one month, and that one year only of the divisible surplus or profits provided for in the policy had been allocated to the insured, or, at least, no notice of the balance due him out of the divisible surplus or profits had been sent to him. These paragraphs must necessarily be read together in connection with the option paragraphs in order to properly construe them, and, when read together, mean that, before the policy would be converted automatically from a profit-participating into a non-participating, paid-up, endowment insurance policy for a nominal sum on account of the failure to pay premiums for three months,

appellant should ascertain the amount due the insured out of the divisible surplus, so that it might be applied to the payment of the monthly premiums, and thereby prevent a lapse of the policy.''

The policy here sued on was a non-participating policy, having exact values and options not dependent upon the company's earnings. A table printed upon the policy contained three columns, showing, at the end of each year for a period of twenty years, when the policy became paid-up, the following options: In the first column the cash or loan values; in the second column the amount of paid-up insurance then available, and in the third column the extended insurance from that date.

Cases are cited to the effect that forfeitures are not favored, and that the insurer may not allow a policy to lapse for non-payment of premiums when it had sufficient funds in its hands to pay the premiums necessary to keep the policy in force. We reaffirm these holdings, but they do not control this case. There is no question of lapse or forfeiture in this case. The policy did not lapse, and there has been no forfeiture. The question is, what are the contractual rights and liabilities of the parties under the contract of insurance under the facts stipulated? Now, it is stipulated that the insured did not pay the semi-annual premium due December 15, 1932, and that the insured died on August 28, 1933, without having paid it.

The non-forfeiture provisions were intended to cover, and do cover, the exact state of facts set out in the agreed statement. They provide that, after three full annual premiums have been paid (and here six such payments have been made), if default be made in payment of any premium subsequent to the third (as is the case here), the policy shall automatically at the time of lapse be converted to non-forfeitable paid-up insurance, as shown in column 2 of the table above referred to.

Now, if the policy contained nothing else as to non-forfeitable provisions after three annual premiums had been paid, no question would or could be raised, but there is a further provision. It is this. After this commutation, which is automatic, requiring no action on the part of

either the insured or the insurer, the insured has ninety days after commutation aforesaid within which time, upon written demand upon the insurer, to take either of the other two options which the policy gives him.

Otherwise stated, the policy provides that, upon default in paying premiums after three annual premiums have been paid, the policy is automatically converted into one for paid-up insurance unless within ninety days after default in paying premiums the insured, upon written demand addressed to the home office of the insurer, shall elect to take either the cash surrender value of the policy or the extended insurance. After default in paying premiums, it is the insured's move, and, if he does not exercise this right, and within the ninety days limited for that purpose, he is bound by the automatic conversion of the policy into paid-up insurance as is provided by the contract. The contract so expressly provides, and we have no authority to change it, nor have we the right to refuse to enforce it.

The fact—and in this case it is a fact—that the insured had borrowed the full loan value of the policy at the time the loan was made does not alter the provisions of the policy above described, although the loan does affect the value of those options.

Here, the insurer tendered, along with its answer, the full amount of the paid-up insurance to which the insured became entitled upon his failure to accept the other options, as he might have done but did not do. The insured, not only had the notice which the policy in his possession gave as to his duty to elect within the ninety days allowed for that purpose, but it is stipulated that he received actual notice in the form of a letter from the company as to the action which it had taken.

In Couch's Cyclopedia of Insurance Law, vol. 3, § 641a, page 2082, it is said: "But where the policy gives an option, and provides for paid-up insurance for a reduced amount if an election has not been made within a specified time, the policy automatically becomes such a paid-up one at the expiration of the period, no prior election having been made, and the insured can claim no alternative right."

The exact question here presented was considered and decided by the Supreme Court of South Carolina in the case of *Ginyard* v. *Lincoln Ins. Co.,* 135 S. C. 48, 133 S. E. 227. The policy there sued on contained the provision that "If the insured shall not, within 30 days after default, surrender this policy to the company at the home office for its cash surrender value, as provided in option (a), or term insurance, as provided in option (b), the cash value, less any indebtedness, will be applied to the purchase of paid-up insurance, as provided in option (c). The insured did not surrender the policy and accept options (a) and (b), and the company, under the third privilege of the option, converted the policy into paid-up insurance, amounting to $114, and, as has been hereinbefore stated, this sum was paid to the respondent as administratrix, and was afterwards tendered back to the company, and the company declined to receive it."

It was there contended, as is contended here, "that all the clauses of the policy must be construed together, that the provisions of the policy must be construed most strongly against the insurer and in favor of the insured, and, if the policy of insurance can be lawfully saved, this will be done," but it was pointed out that, inasmuch as the insured did not apply to have his extended insurance, under option (b) above referred to, as he could have done, the beneficiary might not later claim the benefit of that option. In so holding the court said: "The insured had the policy in his possession, and was acquainted with its terms. He had a right to accept either one of the three options which he deemed most beneficial to himself, and declined to make his election; whereupon the respondent (insurance company) exercised the right expressly given it under the terms of the policy, and converted the cash value into paid-up insurance, amounting to $114."

The court further said: "The company had no right to exercise this option so long as the option remained to the insured to exercise a different option if he saw fit," but that, failing to exercise this right within the time limited for that purpose, the contract must be enforced according to its terms.

So, here, the insured having made no election as to the option he would accept, the rights of his beneficiary must be determined by the provisions of the contract applicable to a case where no election was made. In this connection, it may be said that, had the insured lived for a longer period of time than the reserve of $10.46 would have continued the policy in force, his beneficiary would have been entitled to collect the paid-up insurance, a small amount, it is true, but made small by the fact that the insured had himself borrowed from the insurer the full amount of the loan value.

It follows, from what we have said, that the tender made covered the full liability, and judgment should have been rendered for that amount only, and the judgment for the face of the policy, less the amount of the policy loan, will therefore be reversed, and judgment will be entered here for $32.43, the sum tendered.