WASHINGTON NATIONAL INSURANCE COMPANY *v.* SIMMONS.

4-6158                                                  147 S. W. 2d 3

Opinion delivered January 20, 1941.

*Pryor & Pryor,* for appellant.
*Charles I. Evans,* for appellee.

McHANEY, J. October 1, 1924, the National Life Insurance Company of Chicago issued to appellee's husband, Andrew J. Simmons, its twenty-pay non-participating endowment policy for $3,000, with annual premiums of $105.48 which became due and payable October 1 each year, with a grace period of 30 days. Because of some physical defect or disability, the insured, who was 36 years of age at the time, was rated up 5 years. On February 12, 1934, the Hercules Life Insurance Company reinsured the business of the National Life, including this policy, under a reinsurance agreement, one of the conditions of which provided that the Hercules "shall not be required for five (5) years from the effective date of this contract to make policy loans (except for the purpose of paying premiums—) or to pay cash surrender values." On May 31, 1938, the Hercules merged with

appellant and the latter assumed the obligations of the former, subject to said reinsurance agreement. A clause in said policy provided: "At any time while this policy is in force under its original premium paying condition, the company will advance on proper assignment of the policy and on the sole security thereof, any sum not exceeding the cash surrender value of the policy at the end of the current policy year, less any outstanding indebtedness on or secured by the policy and any unpaid balance of the premium for the current policy year."

Mr. Simmons paid all premiums on the policy up to but not including October 1, 1939, with considerable irregularity in the manner and time of payment, and the policy was permitted to lapse on five different occasions, but was always reinstated on his written application and payment of the premium. The proof shows that it was never continued in force beyond the period of grace, except the premium was paid, a note given therefor, or a written extension agreement entered into within the grace period.

After the premium became due October 1, 1939, and within the grace period, the insured mailed to appellant a check to cover the amount of the premium and the interest on his policy loan, drawn on a bank in Booneville by his son, Howard Simmons, and indorsed by the insured, dated October 18, 1939, for the sum of $165.65. Appellee's evidence shows this check was mailed to appellant the same day, but appellant's evidence shows it was not received by it until October 31 and was deposited in a Chicago bank for collection on the same day. This check was dishonored by the bank on which it was drawn and was returned to appellant on November 14, 1939, and was returned by it to insured on November 22, in a letter advising the insured of the dishonor of the check, that the premium receipt previously sent was invalid, that the policy had lapsed, and that he might apply for reinstatement on the inclosed blank form and return it with remittance of $167.31 to cover the amount then due. Thereafter, on November 24, Mr. Simmons executed application for reinstatement which after giving his name and date of birth in the first sentence reads as follows:

"I hereby apply for reinstatement of the above policy on my life, issued or assumed by the Washington National Life Insurance Company, which lapsed for nonpayment of premium due October 1, 1939." This application was sent to appellant with a check for $167.31 and was received by it on November 29. On December 11, appellant asked for further evidence of insurability and directed insured to go to Dr. McConnell for examination. On December 18, appellant received from Dr. McConnell a certificate that Mr. Simmons was not in good health and was not safely insurable, and on December 27, appellant advised insured that his application for reinstatement was denied and his check for $167.31 was returned. On January 1, 1940, insured was fatally injured in an automobile accident and died the next day.

The policy provides for a cash surrender value upon written application therefor, and the undisputed evidence shows that, at the expiration of the period of grace, it had a cash surrender value of $253.46. The only other non-forfeiture provision in the policy is as follows: "To have this policy automatically reduced at the expiration of the grace period and continued as a paid-up non-participating policy payable at the same time and on the same conditions as this policy, for such amount as the cash surrender value of this policy, less any indebtedness thereon, will purchase, applied as a net single premium at the attained age of the insured rated up five years in age according to the American Experience Table of Mortality with interest at the rate of three and one-half per cent. per annum."

It is also undisputed that the cash surrender value of $253.46 would purchase $436 of paid-up insurance under the terms of said last quoted clause.

Proof of death of insured was made and demand made for payment, which was refused, and this suit followed. At the conclusion of all the evidence both sides requested directed verdicts, appellant, who had tendered the sum of $436 into court, requested that a verdict for this amount be directed against it, and appellee that a verdict for the sum sued for, $1,793.10, be directed against

appellant and in her favor. The court granted appellee's request and a judgment for this amount was entered, together with interest, penalty and attorney's fee.

Appellee contended in the court below and contends here as grounds of recovery that, (1) there had been established a custom of delayed payments of premiums, and, therefore, a waiver of the policy requirement of payment within the grace period; (2) delay in presenting the check of Howard Simmons was the cause of its dishonor; (3) appellant should have loaned from the cash surrender value a sum sufficient to pay the premium; and (4) wrongful refusal to reinstate the policy.

(1) As to this contention of the establishment of a custom of delayed payments and consequent waiver of the policy requirement of payment within the grace period, the undisputed evidence of appellant's assistant secretary gives a complete history of each premium payment, supported by exhibits showing original requests and applications for reinstatement, and shows conclusively, as stated above, that the policy was never continued in force beyond the last day of grace, unless the premium was paid, a note given therefor, or a written extension agreement entered into during the grace period. Of course the insured on five different occasions failed to pay his premium within the grace period and was reinstated on his written application. These facts cannot be said to have the effect of establishing a custom of accepting delayed payments. We hold there was no such custom established and that appellant did not waive payment of premiums as provided in the policy.

(2) As to the check of Howard Simmons, if it were mailed on the date it bears, it should have been received in Chicago by appellant not later than October 21. Appellant says it was received on the 31st and deposited that day. Assuming, however, that it was received on the 20th or 21st, the fact that appellant failed to deposit it until the 31st could not be held to be a payment of the premium and loan interest merely because of this delay, if the check was dishonored on presentation to the drawee bank, which it was. Nor does the fact, that

the drawer of the check may have had on deposit in the drawee bank a sum sufficient to pay the check at some time between the dates of its issue and presentation make any difference. One cannot pay debts, including insurance premiums, with bad checks, and a receipt for premium issued on such a check is not binding. *Ill. Bankers Life* v. *Petray,* 195 Ark. 144, 110 S. W. 2d 1070; *Hare* v. *Ill. Bankers Life,* 199 Ark. 27, 132 S. W. 2d 824; *Naylor* v. *Ill. Bankers Life,* 199 Ark. 463, 134 S. W. 2d 13. Counsel for appellee does not contend that the check was accepted as payment *per se,* but that it should have presented it for payment promptly, and that it was its "duty to return the check a second time for payment and thus to give the insured an opportunity to pay same." No case is cited to support this argument and we know of no such rule of law or binding custom.

(3) It is argued that appellant should have paid the premium out of the $253.46 loan value, without any request from insured so to do, within the period of grace or at any time thereafter. A number of our cases are cited to the general effect that when "an insurance company has in its hands sufficient funds due the insured to pay an assessment or premium when due it is the insurer's duty to apply them to the payment of the premiums and prevent a forfeiture." The quoted language is taken from *Pfeiffer* v. *Mo. State Life Ins. Co.,* 174 Ark. 783, 297 S. W. 847, 54 A. L. R. 600, where the insured was held to be entitled to certain disability benefits which should have been applied by the company to the payment of a premium. All the cases cited and relied on by appellee to support this contention, except two, were cases where the company held in its hands disability benefits, dividends, or the policy had an entirely different provision relative to the loan or cash surrender value. The two cases excepted are *Security Life Ins. Co.* v. *Matthews,* 178 Ark. 775, 12 S. W. 2d 865, and *Continental Life Ins. Co.* v. *Gray,* 188 Ark. 65, 64 S. W. 2d 554, in both of which it was held that the cash or loan value of the policies should have been applied to premium payment to prevent a forfeiture, but in neither case, so far as the opinions reflect, was there an automatic non-forfeiture

clause as hereinabove set out, providing that the cash surrender value, less the indebtedness, should be applied to purchase paid-up non-participating insurance. The insured had the option to borrow this cash surrender value to pay the premium or for any other purpose, on surrender of the policy, but if he did not do so, appellant was required to apply it to purchase paid-up insurance, which it did in the sum of $436. In this respect this case is very much like the case of *New York Life Ins. Co.* v. *Moose,* 190 Ark. 161, 78 S. W. 2d 64, where it was contended the company should have applied the cash value to the payment of a premium. We said: "A sufficient answer to this contention is that the policy very definitely provides a different application of said sum as hereinbefore stated with two options on the part of appellee regarding same." Citing *Life and Cas. Ins. Co. of Tenn.* v. *Goodwin,* 189 Ark. 1073, 76 S. W. 2d 93. Here, the insured elected to pay the premium from his own resources without reference to the cash surrender value and undertook to do so with his son's check. He thereafter applied for reinstatement of the policy in which he admitted that the policy had lapsed. He had the option of borrowing from the cash reserve during the grace period to pay the premium, but if he did not do so and permitted the policy to lapse then the contract very definitely provided what should be done with it, and appellant strictly followed the provisions of the policy. The cash surrender value did not belong to insured. He had the right to borrow it on the security of the policy and pay six per cent. interest thereon, or he had the right to surrender the policy and take the cash surrender value, thus terminating the contract. Only in this sense was it his. We, therefore, hold there was no duty on appellant, on its own motion and without request from insured, to apply this fund to the payment of his premium due October 1, 1939.

(4) It is finally insisted by appellee that appellant wrongfully refused to reinstate the policy on insured's application. This contention appears to be based very largely on the fact that appellant had, on five separate previous occasions, reinstated insured's policy after

lapse without requiring additional evidence of his good health and insurability, and that it should have done so on this occasion. The policy provides that it will be reinstated "at any time after date of default in payment of premium, upon written application therefor accompanied by proof of insurability satisfactory to the company. . . ." The application for reinstatement provides: "The company reserves the right to require additional evidence of good health and insurability before passing upon reinstatement." Of course the insured had the absolute right to be reinstated on these terms. Appellant had the absolute right to require additional evidence of his insurability, that is, it was not required to reinstate the policy solely on the statements of insured, even though it had previously done so five times. Insured was examined by Dr. McConnell of Booneville and he certified in his report that insured was not then an insurable risk due to high blood pressure, arterio sclerosis and high pulse rate. Insured himself signed this report of Dr. McConnell, made no contention to appellant that he was insurable, nor did he ask for a reexamination. This was all the evidence of insurability before appellant, and it cannot be said that it acted arbitrarily in refusing reinstatement, but on the contrary it appears to us that its action was based on sound insurance principles and justified it in declining reinstatement. *Carodine* v. *So. National Life Ins. Co.*, 193 Ark. 376, 99 S. W. 2d 586.

The judgment will be reversed, and judgment will be rendered here for appellee for $436.