# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-2667
_____

| | | |
|---|---|---|
| Sallie Bates, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Security Benefit Life Insurance | * | |
| Company, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: January 16, 1998
Filed:  June 12, 1998

_____

Before LOKEN and MURPHY, Circuit Judges, and WEBBER,[*] District Judge.

_____

LOKEN, Circuit Judge.

Robert Bates purchased an interest sensitive whole life insurance policy from First Pyramid Life Insurance Company.  Security Benefit Life Insurance Company ("SBL") assumed responsibility for administering the policy in 1986.  When Bates missed a premium payment in 1988, SBL lapsed the policy and used its cash value to purchase term life insurance.  Bates died after the term insurance expired.  Sallie Bates,

_____

[*]The HONORABLE E. RICHARD WEBBER, United States District Judge for the Eastern District of Missouri, sitting by designation.

his beneficiary, sued to collect the $100,000 death benefit, arguing that the policy would have been in force when Bates died had SBL not breached the policy by failing to give Bates notice that he could elect to use its cash value to pay premiums. The district court[1] agreed with Mrs. Bates, and SBL appeals. We affirm.

Mr. Bates initially elected to pay a $600 Annual Premium, an amount substantially in excess of the Risk Premium, which is the premium necessary to pay for the life insurance being purchased. SBL placed the excess premiums in an Accumulation Account, earning interest at an annually declared rate. The policy included several premium payment options. One option, found in Paragraph I.2. of the policy, permitted Bates to pay the Annual Premium from his Accumulation Account, in which case that Account would be reduced essentially by the amount of the Risk Premium. This option was only available if the Accumulation Account had sufficient cash value to pay the premium due. Section I of the policy obligated SBL to "notify [Bates] of his ability to elect any of these options." In addition, Section B, the policy's "General Provisions," obligated SBL to notify Bates annually of critical policy values such as the death benefit, the Accumulation Account, the Risk Premium, and the Declared Interest Rate. SBL provided this information in policy anniversary reports.

In September 1988, Bates missed a monthly premium payment. In October, SBL sent him a letter advising that if the premium was not promptly paid, "the policy will lapse subject to any automatic premium loan and/or nonforfeiture benefits." The letter did not advise Bates that his Accumulation Account had a cash value of $2,203.93, nor did it notify him of his option to pay premiums out of the Accumulation Account. Bates did not reply to this letter. SBL lapsed the policy for nonpayment of premium and used the cash value in his Accumulation Account to purchase $100,000 of Extended Term Insurance, relying upon Section H of the policy. This Section, entitled Default or

---

[1]The HONORABLE JIMM LARRY HENDREN, United States District Judge for the Western District of Arkansas.

Surrender Options, provides that after a premium default, the policyholder may surrender the policy for its net cash value, or may use that cash value to purchase Extended Term or nonparticipating Paid-up Life insurance. Absent a policyholder election, "the Extended Term Insurance option will apply automatically." In early 1991, Bates complained that he was not advised of his option to pay premiums out of his Accumulation Account and insisted that his policy be reinstated on the assumption he had made that election. SBL rejected this demand, declaring that his policy "went to Extended Term as described in Section B and H of your contract."[2]

The issue in this case arises because, when SBL used the Accumulation Account to purchase Extended Term Insurance, it assessed a surrender charge and based the cost of that insurance on its maximum permissible mortality charge. As a result, the cash value was only sufficient to purchase $100,000 of term insurance through December 25, 1992. By contrast, had Bates elected to pay policy premiums out of his Accumulation Account beginning in September 1988, the policy would still have been in effect when he died on March 22, 1995.

In January 1996, Mrs. Bates sued in state court to recover the policy's death benefit. SBL removed, and the parties submitted the case to the district court on undisputed facts. The court held that SBL breached the policy by failing to provide Mr. Bates timely notice of his premium payment options, that the appropriate remedy was to treat the policy as if Mr. Bates had elected to begin paying premiums out of his Accumulation Account in September 1988, and therefore that SBL was obligated to pay the full death benefit to his beneficiary. The court also awarded prejudgment

_____

[2]In Allison v. Security Benefit Life Ins. Co., 980 F.2d 1213, 1215 n.3 (8th Cir. 1992), a class action by a Little Rock insurance agency challenging SBL's administration of these policies, SBL represented that it always reinstated a specific policyholder's lapsed policy when the agency complained. SBL's treatment of Mr. Bates suggests this representation was false. Though such a false representation might give rise to a judicial estoppel, we will decide this appeal on its merits.

interest, plus a 12% penalty and attorney's fees under Ark. Code Ann. § 23-79-208(a). SBL does not challenge that part of the award on appeal.

From SBL's perspective, this is a simple case. Because Bates never elected to pay premiums out of his Accumulation Account, and did not choose a different default option after failing to pay the September 1988 premium, SBL properly lapsed the policy and purchased Extended Term Insurance as required by Section H of the policy at the end of the premium payment grace period. The problem with this theory is that SBL's October 1988 warning letter (1) did not advise Bates that he could elect a different premium payment option under Section I of the policy, (2) did not notify him that his Accumulation Account had sufficient cash value to pay the premiums for an extended period of time, and (3) did not advise him of his various default options under Section H. The letter only said that, upon default, the policy would lapse "subject to . . . nonforfeiture benefits." Nonforfeiture benefits is a term not used or defined in Section H nor, as best we can determine, anywhere else in the policy. The question, then, is whether SBL's carelessly worded warning letter breached its contractual duties under the policy.

As this is a diversity case, we apply Arkansas law in construing the policy. See Langley v. Allstate Ins. Co., 995 F.2d 841, 844 (8th Cir. 1993). Insurance policies are construed like other contracts, with the different clauses interpreted to harmonize the entire contract. See Home Indem. Co. v. City of Marianna, 761 S.W.2d 171 (Ark. 1988). If a policy provision "is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted." Keller v. Safeco Ins. Co., 877 S.W.2d 90 (Ark. 1994).

Under Arkansas law, an insurer may not lapse a policy for nonpayment of premiums if the insurer has sufficient funds belonging to the insured to pay the premium due. See Metropolitan Life Ins. Co. v. Stewart, 68 S.W.2d 1017 (Ark. 1934). This rule has its origin in the "fundamental principle of justice which will compel one who

-4-

has funds in his hands belonging to another . . . to use such funds, if at all, for the benefit, and not to the injury, of the owner." State Life Ins. Co. of Indianapolis v. Mitchell, 126 F.2d 867, 870 (8th Cir. 1942). The rule does not invalidate automatic default provisions applying a policy's cash surrender value "to purchase paid up non-participating insurance" if the policyholder has failed to apply the cash surrender value to purchase premiums. Washington Nat'l Ins. Co. v. Simmons, 147 S.W.2d 3, 6 (Ark. 1941). But when the automatic default option is less favorable to the insured, as it was in this case, the insurer "cannot put the insured to an election of options upon failure to pay premiums . . . until it first ascertains the profits or dividends due the insured which might be used to pay premiums *and after notification to him of the amount.*" Stewart, 68 S.W.2d at 1019 (emphasis added).

Section I of the policy, which obligated SBL to notify Bates of his premium payment options, must be construed in light of this principle. Section I imposed a duty to notify Bates of his "ability to elect" a premium option. Bates had the ability to elect the option to pay premiums out of the policy's cash value only when his Accumulation Account had acquired sufficient cash value, a date that could not be determined at the policy's inception because market interest rates determined how rapidly the Account would grow. SBL did provide annual reports stating the current value of Bates's Accumulation Account. But that is not the notice Stewart requires. It is during the payment grace period, when the insured is facing default, that Paragraph I.2. provides a premium payment option that is significantly more favorable to the insured than the default options under Section H. Moreover, SBL was obligated to provide anniversary reports under Paragraph B.15. of the policy, whereas it was obligated to give notice of premium payment options under Section I. Bearing in mind the principle that an insurer must use the policyholder's funds for his benefit, and the principle that a contract should be construed to give effect to all its provisions, see Continental Cas. Co. v. Davidson, 463 S.W.2d 652, 655 (Ark. 1971), we agree with the district court that the notice requirement in Section I obligated SBL to include the following information in its October 1988 warning letter: the amount of cash value then in Bates's

Accumulation Account, his option to use that cash value to pay the past-due premium, and a comparison of the duration of the whole life policy if cash value were used to pay premiums under Paragraph I.2., with the duration of the Extended Term Insurance that would be purchased under the automatic default option of Section H.

SBL argues it fulfilled its contractual notice obligation because Section I of the policy provides actual notice of premium payment options, and because an independent insurance agent testified that he explained those options to Bates on more than one occasion. However, as neither of those methods provided the specific notice that we conclude was required after Bates failed to pay a premium in September 1988, the district court correctly concluded that SBL breached the policy and that Bates would have elected to pay premiums out of his Accumulation Account had he been properly and timely informed of that option.

The judgment of the district court is affirmed. Mrs. Bates is entitled to recover her reasonable attorney's fees on appeal under Ark. Code Ann. § 23-79-208(a). Accordingly, in addition to taxing costs of the appeal in this court, she may apply to the district court for an attorney's fee award.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-