METROPOLITAN LIFE INSURANCE COMPANY *v.* WHITE.

4-4195

Opinion delivered March 2, 1936.

332

*Moore, Gray, Burrow & Chowning,* for appellant.

*A. D. Camp* and *Philip McNemer,* for appellee.

BUTLER, J.   On November 1, 1926, Della White, the appellee, procured a policy from the appellant company in the sum of $801 on the life of Burnest Washington, her son.   Premiums were payable weekly and were duly and regularly paid until June 5, 1933.   At that time the appellee had no money with which to pay the premiums and the policy lapsed.   Previous to this, she had procured a loan on the policy in the sum of $8.40.   Burnest Washington died on January 28, 1934.   Due proof of his death was made, liability was denied, and this suit followed resulting in a verdict and judgment in favor of appellee, from which is this appeal.

It was admitted that on the 5th of June, 1933, the policy had a cash surrender value of $28.17, which, with the loan deducted was sufficient to pay the premiums up to, and beyond, the death of Burnest Washington.   The case was defended on the ground, among others, that appellee could not maintain the suit for the reason that she was not named as beneficiary in the policy sued on. There is no merit in this contention.   The undisputed evidence is to the effect that at the time the policy was issued Burnest Washington was a minor.   Appellee, herself, procured the policy, and, with the knowledge of the company, paid all of the premiums from the date of issuance up to June 5, 1933.   Appellee procured the loan

of $8.40, and was at all times recognized as the beneficial owner of the policy which was taken out with the understanding that if she survived the insured she would be entitled to its benefits.

At the time the policy lapsed for the nonpayment of the premium due June 5, 1933, appellee had procured policies from the appellant company on her own life and on the lives of four of her children besides Burnest Washington. Appellant contends that the policy on the life of Burnest Washington was surrendered and its value applied to the payment of the policies above-mentioned which were then in arrears; that there remained $6.26 of the reserved value of the $801 policy which was applied to the procurement of a policy in the sum of $178 on the life of Burnest Washington; that all the policies, including the one for $178, were paid on for several weeks thereafter and then lapsed for the nonpayment of other premiums falling due; that the $178 policy was delivered at the home of the appellee to one of her daughters and that appellee accepted the policies and paid on them with the full understanding that the $801 policy was cancelled. This contention of the appellant is supported by the testimony of Mr. L. B. Jones, the agent of the company who attended to the transaction, as well as by the testimony of other employees of the appellant. To further support this contention, a form was introduced in evidence, prepared by the company and providing for the surrender of the $801 policy, which was signed by the insured, Burnest Washington. On this form was a place for the signature of ''The Premium Payer'' who, in this instance, was Della White, but her name was not signed thereto. Contradicting the contention of appellant is the testimony of appellee who stated that when she was unable to pay the premiums she sent for Mr. Jones, the agent of the company, and gave him the Burnest Washington policy and the premium book with the understanding that so much of the cash surrender value as was necessary would be applied to the payment of the premiums until such time as she would be able to pay them from her earnings; that this was in July, 1933. She waited for quite a while for the return of the policy and

finally, after some delay, contacted Mr. Jones and asked why her policy had not been returned. He informed her that it had been sent to the home office for the purpose of having the loan approved, and that it had not yet been returned. About this time, or shortly thereafter, appellee received a memorandum from the home office which dissatisfied her, and she went again to appellant's office in Little Rock "trying to get some kind of understanding about what Mr. Jones had done with the policy." She also went to the Insurance Commissioner, and afterward, to a prominent attorney of the city to get some help in "straightening the matter out." In March, 1934, Mr. Jones gave her a small check, amounting to $18.72, which she presumed was the full value of Burnest Washington's policy and which she indorsed March 31, 1934, and delivered to the collector of Pulaski County in payment of her taxes. Appellee further testified that the $178 policy said to have been issued in lieu of the $801 policy was never received by her and had never been in her possession. Appellee had only two daughters residing at her home, and these testified that said policy had never been delivered to them.

It was in evidence, and appellant contends that the check for $18.72, cashed by appellee on March 31, 1934, had been delivered to her and tendered as the paid-up value of the $178 policy, and her receipt thereof was the acknowledgment of full satisfaction of all demands against the company.

Della White, the appellee, is a negro woman and although able to read and write she claims that she did not understand the effect of the transaction with the company with respect to the $801 policy. We think the evidence substantiates her statement. The attorney she consulted, who is not connected with the present litigation, is beyond question an astute and able lawyer, yet he was unable to understand the explanation given by the agent of the company when he was attempting to straighten the matter out. With reference to this, he said: "I called up the Little Rock office and Mr. Jones came over to see me and went into a long detailed ex-

planation concerning the situation. I could hardly understand it.'' If this attorney could not comprehend the conduct of the appellant company with respect to the Burnest Washington policy, it could hardly be expected that Della White would, and it is not remarkable that she was dissatisfied with the conduct of appellant's agents. Even they admitted that she was dissatisfied.

Counsel for the appellant suggest certain discrepancies in the testimony of appellee and call to our attention a letter written by one of her daughters to the company, which she authorized, tending to refute her contention and to support that of the appellant. This, however, was a question for the jury, for it, and it alone, is the judge of the credibility of witnesses and the probative value of their testimony. Giving to the testimony of the appellee the probative effect to which the jury found it was entitled, we find substantial evidence to warrant the conclusion reached by the jury.

Over the objection and exception of the appellant, the court, in its instruction No. 1, told the jury as a matter of law that where an insurance company has funds in its hands available for the payment of premiums, in the absence of instructions to the contrary, it is its duty to apply the funds to the payment of premiums to prevent a lapse of the policy, and that in this case if the company had such sum available to pay the premiums on the policy sued on up to the date of the death of the insured, its verdict should be for the appellee; and in instruction No. 3, the court declared this to be the duty of the jury even though Burnest Washington signed an agreement with the company to surrender the policy for cancellation if this action on his part was not agreed to by the appellee. The argument is made, first, that the policy did not provide for such an application of the cash surrender value but that it could be applied to the purchase of a nonparticipating free policy which, in this case, would have been for $81 if there had been no indebtedness against the policy, and that, since Della White was not named as the beneficiary, her assent to the surrender for cancellation made by Burnest Washington was not necessary, and that the trial court erred in instruct-

ing otherwise. A sufficient answer to these contentions, as has been previously noted, is that from the very inception of the policy appellee was treated as the beneficial owner and the sum representing the cash surrender value was treated as available for the payment of premiums. The $8.40 loan which has been heretofore noted was procured for that purpose and was thus used.

The cases cited by the appellee make clear the duty of the appellant with regard to the application of the value of the policy to the payment of the premiums, and as is said in *Union Central Life Ins. Co.* v. *Caldwell,* 68 Ark. 505, 58 S. W. 355: "The doctrine does not arise out of the peculiar facts of any particular case. It does not depend upon contract, custom, or course of dealing for its existence and potency. It has its origin in that fundamental principle of justice which will compel one who has funds in his hands belonging to another, which may be used, to use such funds, if at all, for the benefit, and not to the injury, of the owner; for his consent to the one and dissent to the other, will be presumed." See also *Reliance Life Ins. Co.* v. *Hardy,* 144 Ark. 190, 222 S. W. 12; *Missouri State Life Ins. Co.* v. *Brown,* 188 Ark. 1136, 69 S. W. (2d) 1075, and cases therein cited.

In support of the proposition that appellee, although not specifically named as the beneficiary in the policy, was not bound by the unauthorized action of the insured and was entitled to maintain this suit, attention is called to the recognition by the company in its contract of insurance of its right to make payment to the person equitably entitled to the same by reason of having incurred expenses on behalf of the insured; and also to the case of *Reilly* v. *Henry,* 187 Ark. 420, 60 S. W. (2d) 1023, which recognizes the equitable interest of one who pays the premiums and who has possession of the policy. The trial court submitted to the jury, under proper instruction, the question of whether the policy was surrendered for the purpose of cancellation, and its conclusion that it was not so surrrendered being supported by substantial testimony, and no error appearing in the instructions given by the court, it follows that the judgment is correct, and it is, therefore, affirmed.