**STATE LIFE INS. CO. OF INDIANAPO-
LIS, IND., v. MITCHELL.**

**MITCHELL v. STATE LIFE INS. CO. OF
INDIANAPOLIS, IND.**

Nos. 12021, 12027.

Circuit Court of Appeals, Eighth Circuit.

March 30, 1942.

Milton W. Mangus, of Indianapolis, Ind.,
and George K. Cracraft, of Helena, Ark.

(Ozero C. Brewer, of Helena, Ark., on the brief), for State Life Ins. Co., of Indianapolis.

C. E. Daggett, of Marianna, Ark. (Daggett & Daggett and J. B. Daggett, all of Marianna, Ark., on the brief), for Addie W. Mitchell.

Before THOMAS and JOHNSEN, Circuit Judges, and REEVES, District Judge.

REEVES, District Judge.

This is an action by the beneficiary on a policy of life insurance. Addie W. Mitchell was the wife of the insured and the plaintiff in the trial court. She recovered judgment in the sum of $5,000, the face of the policy, with accumulated interest. The appellee on her part prosecuted a cross appeal from an adverse ruling on her claim for damages and attorney's fee.

The case was submitted to the trial court upon an agreed statement of facts. The policy, in the sum of $5,000 was issued upon the life of John William Mitchell, on April 9, 1903. The annual premium was $124.50. At a later date the policy was modified by providing double indemnity benefits and an additional premium of $7.50 was required. This brought the annual premium to $132. All premiums were paid up to and including the one due April 9, 1938. On the last named date the insured obtained a loan "upon the security of the value of said policy, which said loan with interest thereon is an indebtedness against and a lien upon said policy." This loan was in the sum of $2,559.32. The next premium with interest on the loan became due April 9, 1939. The assured was notified in advance by the appellant both as to premium and interest. The total amount demanded was $228.60. This premium had been reduced by a dividend credit of $26.20. The assured was then advised that failure to pay under the terms of the policy would result in forfeiture, except that "extended insurance" would apply as "may be provided in the policy or by statute." The assured acknowledged receipt of the notice, and, in arranging to pay the interest on the loan, requested appellant to permit the payment of the premium in several small installments. In this request the insured stated: "I have been in bad health for some time and on half time and as a consequence am usually short of money." The appellant granted the request and the assured executed a series of installment notes to cover the premium. Concurrently with the delivery of the notes insured paid the annual interest on his loan in the sum of $127.97. The company acknowledged receipt of the premium notes and interest on the loan. When the first installment note became due the insured was again notified of the fact and advised that forfeiture of the policy would follow failure of prompt payment. The first note in the sum of $12.57 became due May 10, 1939. The insured mailed his check for the amount two days later. The appellant rejected the check because not received on the due date of the note and quickly declared the policy lapsed and forfeited. It suggested that the insured apply for reinstatement. The appellant required that the insured "furnish the Company a re-examination to be made at your expense your nearest reputable doctor." The insured promptly submitted to a physical examination on blanks furnished by the appellant. When apprised of the results of the examination, appellant, on May 26, 1939, advised the insured that his application for reinstatement "has been considered and declined." It returned the check for $12.57.

After considerable correspondence the appellant persisted in its purpose to declare a forfeiture. It treated the policy as having been forfeited for nonpayment of the premium due April 9, 1939. On that date the reserve accumulations on the policy were admittedly $2,880.80. The indebtedness on that date was $2,559.32. There was, therefore, the sum of $321.48 accumulated to the credit of the insured above the indebtedness. This sum was computed by the appellant as sufficient to continue the face amount of the policy in force for one year and one hundred and forty-one days, as of the then attained age of the assured. Accordingly, on June 8, 1939, the appellant wrote its policyholder as follows:

"Your policy No. 121583 has lapsed on account of non-payment of the premium which fell due April 9, 1939. However, by virtue of the non-forfeiture option in the policy there is in force to August 28, 1940, extended term life insurance for the amount of $5,000."

With this letter the appellant enclosed its check for $154.17 which included a refund of the annual interest on the loan paid by the insured in advance in the sum of

$127.97. It also included a refund of the policy dividend in the sum of $26.20. These refunds the insured refused to accept. It was his contention that the appellant had no right to forfeit or lapse his insurance for the reason that the values of the policy were more than sufficient to pay the premium then due.

Subsequently the insured brought suit against the appellant for breach of contract in thus declaring a forfeiture of his policy. In that suit he asked for damages to cover losses and expenses sustained and incurred by him. The issues were made up by an answer of the appellant wherein it denied breach of its contract and alleged that it had accorded to its insured the full benefits of his accumulated reserve by tendering extended term insurance for the full amount of the policy to August 28, 1940. The appellant in its answer, among other things, said:

"This defendant alleges that it has carried out every provision of the contract between the plaintiff and this defendant and has not repudiated any part of the same, but the plaintiff had refused said tender of extended insurance *and this defendant continues said tender and continues and offers to do every thing which the contract between said plaintiff and this defendant requires. This defendant further prays that said plaintiff be required to accept said tender aforesaid in full performance by the defendant herein of all of its contractual duties to the plaintiff herein.*"

Appellant's answer was filed February 15, 1940. On March 14, 1940, the insured died. On the next day his attorneys caused the suit to be dismissed, and the following entry was made on the court docket: "This cause is dismissed this day without prejudice and at the cost of the plaintiff."

Immediately thereafter the appellant was notified of its insured's death and blanks for proof thereof were requested. This request was repeated before appellant replied, on April 16, 1940. However, appellant, through its general counsel, acknowledged receipt of the communications, and, after reviewing the facts concerning the former proceeding, referred the claimant, the appellee, to appellant's local attorneys. Nothing was accomplished by further negotiations, and this suit followed.

The appellee sued for the face of the policy on the theory of extended insurance as declared by the appellant and asked judgment with interest "together with penalty of twelve per cent damages, and reasonable attorney's fee, under Section 7670 Pope's Digest of the laws of Arkansas; * * *."

In its answer the appellant pleaded as a defense the suit filed by the insured in his lifetime and averred that he had rejected the offer of extended insurance. Moreover, the appellant alleged that inasmuch as the insured had taken the position that his policy had not lapsed, the beneficiary would be entitled at most to the face of the policy, less the indebtedness. It was stated, however, by the appellant in its first answer that: " * * * if the policy did lapse, the total amount which said John W. Mitchell was entitled to under the nonforfeiture options was the difference between the reserve value of the policy, and the amount of the loan received; namely, $321.48 plus the advance payment of interest of $127.97, and the dividend of $26.-20."

By an amended answer the company alleged:

"That said policy contained no express provision as to how or in what manner the said $321.48 was to be used, and did not expressly provide that said $321.48 was to be used for extended insurance, as there was said indebtedness against said policy * * *.

* * * That there was no provision for extended insurance under the terms of said policy where an indebtedness existed against the policy, and if it be true that the insured failed to pay the premium in accordance with the terms of the policy the offer which the defendant made to utilize the $321.48, by offering extended insurance in the amount of $5,000.00 was refused by the said John W. Mitchell, and he having refused to accept the offer, the company is not bound thereby."

The appellant further averred that the suit instituted by its policyholder constituted an election and was sufficient to bar the right of the plaintiff (appellee here) to maintain this action. Its answer concluded with the following prayer: "Wherefore, defendant prays that the complaint be dismissed because of the election made by the insured and his acts constituting an estoppel in his lifetime, or in the alternative that the amount of plaintiff's recovery be limited to the balance of the loan value of said policy, namely, $321.48, or in the

alternative that the plaintiff's recovery be limited by a deduction in favor of the defendant equal to said loan of $2,559.32 and the balance of said premium in the sum of $100.63."

It will be observed from the foregoing that two questions are presented for decision: (1) Whether the appellee is estopped from the maintenance of this suit by reason of the action brought by the policyholder against the appellant, and, (2) whether, if not so estopped, appellant is liable for the face amount of its policy. There is an incidental question on appellee's claim for damages and attorney's fees. These will be noticed and discussed in the course of the opinion.

 1. The first question presented and stoutly urged by the appellant is that the suit for damages by the decedent policyholder was such an election of remedies as to preclude the appellee from maintaining her suit. The doctrine of the election of remedies is not in the case. This doctrine was excellently defined by Judge Booth of this court in Henderson Tire & Rubber Co. v. Gregory, 16 F.2d 589, loc. cit. 593, 49 A.L.R. 1503, where he said: "The doctrine stated in its simplest form means that, if a party has two inconsistent existing remedies on his cause of action and makes choice of one, he is precluded from thereafter pursuing the other."

The insured was the sole contracting party with the appellant when his suit was filed. Because of the contract with the appellant he had no other remedy as a suitor save that for breach of contract.

The appellee did not at that time have even a vested interest in the contract for the reason that the policy reserved to the insured the right to change the beneficiary. Self v. New York Life Ins. Co., 8 Cir., 56 F.2d 364, loc. cit. 366; Aetna Life Ins. Co. v. Dodd, 8 Cir., 103 F.2d 793, loc. cit. 794; Spiro State Bank v. Bankers' Nat. Life Ins. Co., 8 Cir., 69 F.2d 185, loc. cit. 190. Moreover, the appellee has not in this case sought the remedy pursued by her deceased husband. Her suit is as beneficiary for the benefits promised in the policy and one that her husband could not have maintained.

 2. It is admitted that when the appellant forfeited the policy as of April 9, 1939, it had in its hands an accumulated reserve of $321.48 above the indebtedness. It has been repeatedly ruled by the Supreme Court of the State of Arkansas: "* * * that insurance companies cannot declare forfeitures of policies for nonpayment of premiums when they have sufficient funds in their hands belonging to the insured to pay the premiums, and the duty rests upon them to use the funds to pay the premiums and thereby prevent forfeitures." Security Life Ins. Co. v. Matthews, 178 Ark. 775, 12 S.W.2d 865, loc. cit. 866, and cases cited.

It has even been held by the same court that where the value was insufficient "to pay the full annual premium", yet "this makes no difference. A legal duty rested upon appellant to make the application as far as it would go in order to protect the policyholder." Continental Life Ins. Co. v. Gray, 188 Ark. 65, 64 S.W.2d 554, loc. cit. 555.

The reason for the rule was quoted verbatim in Metropolitan Life Ins. Co. v. White, 192 Ark. 331, 91 S.W.2d 1033, loc. cit. 1035, as follows: "'The doctrine does not arise out of the peculiar facts of any particular case. It does not depend upon contract, custom, or course of dealing for its existence and potency. It has its origin in that fundamental principle of justice which will compel one who has funds in his hands belonging to another, which may be used, to use such funds, if at all, for the benefit, and not to the injury, of the owner; for his consent to the one, and dissent to the other, will be presumed.'"

In the case of Metropolitan Life Ins. Co. v. Stewart, 188 Ark. 903, 68 S.W.2d 1017, loc. cit. 1019, the court said in construing the forfeiture provisions of an insurance policy: "These provisions in the policy must be construed as a harmonious whole and in the light of the rule consistently announced by this court to the effect that insurance companies must not allow policies to lapse for the nonpayment of premiums when they have sufficient funds in their hands to pay the premiums."

The case of Washington Nat. Ins. Co. v. Simmons, 201 Ark. 734, 147 S.W.2d 3, is not opposed to this rule. In that case there was no question of forfeiture but the application of an automatic provision of the policy which continued it in force for an agreed amount of paid up insurance.

 In this case the annual premium was $132. The surplus reserve was adequate to keep the policy in force more than two years; in fact, with dividend additions,

for a period of almost three years. For naught that appears to the contrary it was an Arkansas contract and governed by the laws of that state. The appellant, therefore, had no right to forfeit the insurance. It was because of such an act that its policyholder brought suit for breach of contract. The policyholder died in less than a year after his last payment became due, on April 9, 1939, and clearly the policy was in force and effect under any theory of the case, at the time of his death.

■ 3. The trial judge entered judgment for the face of the policy with interest and did not permit the appellant to make deductions therefrom because of the insured's indebtedness. It is admitted in the stipulation of facts that such indebtedness had not been paid. While there should be no question of the right to recover on the policy, a serious one arises on a proper application of the policy loan. When the appellant declared a forfeiture (which it had no right to do) on June 8, 1939, it wrote its policyholder as follows:

"Your policy, No. 121583 has lapsed on account of non-payment of the premium which fell due April 9, 1939. However, by virtue of the non-forfeiture option in the policy there is in force to August 28, 1940, extended term life insurance for the amount of $5,000.

"Our check for $154.17 covering the balance due you on account of the termination of this policy is enclosed herewith."

The appellant, in its answer in this case, sought to defeat this suit by invoking the doctrine of estoppel on the question of the election of remedies and then prayed: " * * * or in the alternative that the amount of plaintiff's recovery be limited to the balance of the loan value of said policy, namely, $321.48."

This presupposes the deduction of the indebtedness from the reserve, which is the equivalent of payment. Admittedly, there is no provision in the policy for extended term insurance in case of a loan. It could not, therefore, under the policy, properly provide extended term insurance after wrongfully declaring a forfeiture.

According to the agreed statement of facts the policyholder was aged and infirm and in financial distress when his premium became due on April 9, 1939. The appellant was apprised of that fact. The policyholder supposed that he had the usual grace period to pay his installment notes, and, so relying, was a few days late in sending a check for the first installment. The appellant seized upon what it supposed was its technical right to declare a forfeiture. The annual interest on the loan had been paid in advance and reserves were adequate to protect the insured against forfeiture. It was apparent that the appellant was endeavoring to accelerate the expiry of its policy obligation.

Under the terms of the policy, as modified by the laws of Arkansas, even if the insured had not resumed the payment of premiums, the policy would have continued in force for nearly three years. Because of the age and physical condition of the insured it was advantageous to the appellant to shorten the period of insurance. In violation of its contractual obligation it advised its policyholder that his insurance was extended for a period of one year and one hundred and forty-one days. This would be approximately half the period the policy would have been in force under the law, without the payment of additional premiums. Moreover, the appellant returned the annual interest paid by its policyholder for the year beginning April 9, 1939. This would indicate that it was closing the account in order to make a new contract. This was done over the protest of its policyholder.

By violating the terms of its contract it compelled its policyholder to resort to litigation for redress of the wrong it had done. Appellant had announced its position on its contract and was adhering to that position when its policyholder died. The appellee then became vested with the entire interest in the policy. This is so for the reason that the original policy contract could not be restored to its former status. The position of the appellant and its acts had deprived the policyholder of valuable rights. Correspondingly it stood to profit by the deprivation of such rights. It should not be permitted to recede from a position believed by it to be profitable now that its position has become an advantage to appellee. It should be estopped now to take the position which its policyholder in his lifetime sought in vain to have it take.

The policy loan provided that the indebtedness was "upon the security of the value of said policy." It would seem that the appellant treated the reserve accumu-

lated on the policy as its security. When the forfeiture was declared it computed the amount of its indebtedness and offset same against the accumulated reserve. There remained the balance of $321.48. It used this sum as a net single premium to purchase $5,000 of insurance for a period of one year and one hundred and forty-one days. The new contract did not spring from provisions of the policy but was a new contract. The appellant had no lien on the net single premium used by it. That money belonged to its policyholder. It had already offset its policy loan against the reserve and no provision was made for a mortgage or a lien against the new policy. The appellant had in effect foreclosed its lien on the reserve. Even though the parties have agreed that the loan has not been paid, yet the appellant now holds in its hands funds with which to cancel such indebtedness. Under these circumstances the appellee was entitled to judgment for the face of the policy. Accordingly, the judgment of the trial court should be affirmed.

█ 4. The statute providing for the imposition of a penalty and the allowance of an attorney's fee was not enacted when this policy was issued. It has been held by the Supreme Court of Arkansas that contracts which became effective before the enactment of the law were not within the application of the law. Arkansas Mutual Fire Ins. Co. v. Woolverton, 82 Ark. 476, 102 S.W. 226; Arkansas Mutual Fire Ins. Co. v. Stuckey, 85 Ark. 33, 106 S.W. 203; see, also, Crowe v. Security Mortgage Co., 176 Ark. 1130, 5 S.W.2d 346. The judgment of the trial court in denying damages is also affirmed.

JOHNSEN, Circuit Judge (concurring specially).

I concur in the judgment of affirmance, upon the ground that, before his death, the insured and, after his death, the beneficiary had the right to assent to and accept the company's unretracted action, in lapsing the original policy, in cancelling the indebtedness against it from the reserve accumulations, and in purchasing unincumbered term insurance with the remaining surrender value. That was what the company did and what it unbrokenly asserted that it had a legal right to do. It ought not now to be heard to complain that it is unfair to permit it to be taken at its own word and action.