18 So.2d 509

## SALOMON v. EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES.

No. 37289.

April 17, 1944.

Rehearing Denied May 22, 1944.

Rosen, Kammer, Wolff, Hopkins & Burke, of New Orleans, for defendant and appellant.

Benjamin Y. Wolf, of New Orleans, for plaintiff and appellee.

HAMITER, Justice.

On a previous hearing of this controversy, which occurred on plaintiff's appeal from a judgment sustaining defendant's exceptions of no cause and no right of action and dismissing the suit, we set aside the district court's judgment, overruled the exceptions, and remanded the case for a trial on its merits. 202 La. 1001, 13 So.2d 329.

In the suit plaintiff, Leonard E. Salomon, is seeking a decree declaring to be in full force and effect an insurance policy issued on his life by defendant, Equitable Life Assurance Society of the United States. The defense offered is that the policy lapsed because of nonpayment of premiums.

On the trial of the merits the district court rendered judgment in plaintiff's favor. Defendant is now appealing.

The policy, bearing date of December 26, 1911, is for the amount of $10,000. It was issued "upon the basis of the payment of premiums annually but, subject to the Society's written approval, premiums may be paid in semi-annual or quarterly installments at the Society's adopted rates for fractional premiums . * * *." And for such payment a grace period of 31 days is allowed.

The contract also provides:

"This policy shall participate annually in the distribution of the surplus of the Society as ascertained and apportioned by it. Dividends, at the option of the Insured (or of the assignee if any) shall in each year, on the anniversary of the register date hereof be either—

"1. Paid in Cash; or, 2. Applied toward the payment of any premium or premiums; or, 3. Applied to the purchase of paid-up Additional Insurance; or, 4. Left to accumulate at 3%, compounded annually, and payable at the maturity of this policy, but withdrawable at any anniversary of its register date.

"Unless the Insured (or the assignee if any) shall elect one of the foregoing options within three months after the mailing by the Society of a written notice requiring such election, the dividend shall be applied to the purchase of paid-up Additional Insurance (Option 3). This Additional Insurance may be surrendered at any time for the amount of the original Cash Dividend."

By a dividend election clause which he executed on January 18, 1941, the insured directed that any future dividends be "applied toward the payment of any premium due on the policy if the remainder of such premium is duly paid."

All premiums on the policy, as well as the interest on a $2,250 loan, were paid up to and including the year 1940. In making the payments, during a period of near-

ly 30 years, it was the insured's custom to use the annual dividends.

On December 18, 1941, which was the policy's anniversary date, there became due an annual premium of $197.40 and also loan interest of $112.50. On the same date a dividend of $69.30 was earned and declared, this representing more than one-third of the amount of the annual premium then due. Meanwhile, specifically on November 15, 1941, the insurer notified plaintiff by mail about the due date of the premium and loan interest and about the dividend.

On January 2, 1942, the mentioned obligations of the insured being then unpaid, defendant mailed a reminder notice to plaintiff stating that January 18, 1942 (the final day of the grace period), was the last day for payment of the premium and of the loan interest, both of which had become due on December 18, 1941.

The grace period expired without payment being made; whereupon, on or about January 19, 1942, defendant sent to plaintiff a lapse notice which stated in part:

"This is a friendly reminder of the non-payment of the premium on your policy. Doubtless this was an oversight.

"For your convenience, request for re-instatement together with declaration as to health may be made on the reverse side of this form. Please complete and return the request with a remittance to cover the amount due. In this way your insurance may be safe-guarded, provided the evidence of insurability is satisfactory to the Society; otherwise the remittance will be returned.

"If you desire further information, please communicate with us at once. Your inquiry will receive careful consideration."

On January 24, 1942, or six days after the expiration of the grace period, defendant received from the insured the sum of $240.60, a remittance equal to the amount of the overdue premium of $197.40, plus loan interest of $112.50, less the dividend of $69.30. Defendant immediately wrote to plaintiff suggesting that he apply for re-instatement of the policy, enclosing in the letter an escrow or conditional receipt for the stated sum.

Plaintiff did not make application for re-instatement; instead he brought this suit to have the policy declared to be in full force and effect, the theory of it being that no lapse had occurred. In this connection he shows that, under the terms of the policy, he was entitled to have the dividend of $69.30 applied to the payment of any premium or premiums, provided he elected to do so within three months after the mailing by the insurer of a written notice requiring the election; and that he did so elect, within said three months' period and at the time he paid the balance due on the premium, to have the dividend thus applied.

It is defendant's position, to quote from the brief of its counsel, "that under the terms of the policy and the dividend election (clause) the dividend could only be used towards the payment of the premium if the remainder of the premium was paid on or before its due date or within the grace period, and that, as the plaintiff did

not tender payment of the balance of the premium until after the grace period, the policy automatically lapsed."

 These respective contentions, as well as most of the above recited important facts, were previously considered by us when the controversy was here on defendant's exceptions of no right and no cause of action. At that time we announced the law of the case, holding that under the contract's provisions "it is evidently contemplated that the dividend must be applied towards the payment of the premium in order to keep the policy in effect until the dividend so applied is exhausted". Further, we offered the observation, among others, that, "One who has funds in his hands belonging to another, which may be used, if at all, is duty bound as a fundamental principle of justice to use such funds for the benefit and not the injury of the owner".

It may be that we did not then have before us the dividend election clause, signed on January 18, 1941, by which the insured instructed the insurer to apply any future dividends toward the payment of any premium due on the policy *if the remainder of such premium is duly paid*. However, no violation of that clause seems to have occurred; the insured tendered payment of the balance due on the premium on a date well within the above mentioned three months' period stipulated in the policy.

In the brief of defense counsel it is said: "There has been a unanimity of decision that where an insured has elected to apply dividends toward the payment of premiums the policy will lapse unless the full

premium is paid when due, and that a partial payment of a premium does not fulfill the obligation of the insured under the contract." By this they mean that the conclusion we reach herein stands alone in the jurisprudence throughout the United States. With this we cannot agree. While representing the minority view perhaps, our holding accords with several decisions, involving somewhat similar factual situations, from other jurisdictions; among these are Mutual Life Insurance Company v. Henley, 125 Ark. 372, 188 S. W. 829; Metropolitan Life Insurance Company v. Stewart, 188 Ark. 903, 68 S. W.2d 1017; Ætna Life Insurance Company v. Murray, Tex.Civ.App., 163 S.W. 2d 658; State Life Insurance Company v. Mitchell, 8 Cir., 126 F.2d 867.

 But in all events our decision represents a just and common sense view. This defendant is a mutual insurance company, a corporation of which its policy holders are members. To the rights of those members the company's officers and agents owe reasonable protection. When defendant mailed the lapse notice on or about January 19, 1942, it was indebted to plaintiff in the sum of $69.30, an amount sufficient to continue the policy in full force and effect for at least a month longer. It should have applied this sum to the unpaid premium rather than attempt to declare a forfeiture of the policy, an undertaking disfavored in the law of insurance. If this application had been made, no delinquency would have existed when the balance of the annual premium was tendered on January 24, 1942, or only six days after the expiration of the grace period.

We find no error in the judgment appealed from and it is affirmed with costs.

O'NIELL, C. J., does not take part.

ODOM, J., absent.